

Opinions of the United
States Court of Appeals
for the Third Circuit

1-7-1998

# In Re: Prudential

Precedential or Non-Precedential:

Docket 96-5329

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"In Re: Prudential" (1998). *1998 Decisions*. Paper 2.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/2

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 7, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-5329

*IN RE: THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA SALES PRACTICE LITIGATION
ALL AGENT ACTIONS

HERBERT SCHULTE, MDL transfer; S.D. Illinois; DNJ Civ.
95-4740; MICHAEL D. GORDON, MDL Transfer; W.D.
Kentucky (Paducah); DNJ Civil Action 95-4738; RICK A.
MARTIN, MDL transfer, W.D. Kentucky (Paducah), DNJ
Civil Action 95-5013; KENNETH R. YOUNG, MDL transfer,
M.D. Florida (Tampa), DNJ Civil Action 95-5010;
MICHAEL WEAVER, MDL transfer, S.D. Illinois
(E. St. Louis), DNJ Civil Action 95-5011

v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,

        Appellant

*(Amended as per the Clerk's 6/20/96 Order)

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 95-cv-04704)

Argued September 8, 1997

BEFORE: GREENBERG, ALITO and SEITZ,
Circuit Judges.

(Opinion Filed: January 7, 1998)

Neil J. Maune, Esquire (ARGUED
 FOR ALL APPELLEES)
2013B Johnson Road
P.O. Drawer B.
Granite City, Illinois 62040
 Attorney for Appellee
 Michael R. Weaver

J. Bruce Miller, Esquire
4th Floor
621 West Main Street
Louisville, Kentucky, 40202
 Attorney for Appellee
 Rick A. Martin

Delmar O. Koebel, Esquire
6 Joshua Drive
O'Fallon, Illinois 62269
 Attorney for Appellee
 Herbert Schulte

Kenneth W. Scott, Esquire
Scott & Jahn
7415 Burlington Pike
P.O. Box 671
Florence, Kentucky 41022
 Attorney for Appellee
 Michael D. Gordon

Karla R. Spaulding, Esquire
James, Hoyer & Newcomer
4830 West Kennedy Boulevard
One Urban Center, Suite 147
Tampa, Florida 33609
 Attorney for Appellee
 Kenneth R. Young

Michael H. Barr, Esquire (ARGUED)
Reid L. Ashinoff, Esquire
William M. Walsh, Esquire
Sonnenschein Nath & Rosenthal
1221 Avenue of The Americas
New York, New York 10020

Alan E. Kraus, Esquire
Riker, Danzig, Scherer, Hyland
 & Perretti
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07960
 Attorneys for Appellant

OPINION OF THE COURT

SEITZ, Circuit Judge.

This appeal presents a novel question in this court of whether the "insurance business" exception found in the National Association of Securities Dealers ("NASD") Code of Arbitration Procedure precludes arbitration of employment disputes that implicate insurance issues.1

I. Background

A. Facts and Procedural History

Certain questionable sales practices of the Prudential Insurance Company of America ("Prudential") gave rise to

_____

1. The district court relied on diversity jurisdiction, 28 U.S.C. S 1332, and federal question jurisdiction, 28 U.S.C. S 1331, to entertain plaintiffs' state law claims and causes of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. SS 1961–1968. We exercise jurisdiction under the Federal Arbitration Act, 9 U.S.C. SS 16(a)(1)(A) and 16(a)(1)(C). Because this appeal presents a legal
question concerning the applicability and scope of an arbitration agreement, our standard of review is plenary. See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc. 7 F.3d 1110, 1113 (3d Cir. 1993).

several lawsuits against it by former employees.[2] Plaintiffs are former Prudential sales agents who brought suit alleging that Prudential took adverse employment action against them in alleged retaliation for their refusal to participate in the company's insurance sales fraud. In response to the plaintiffs' action, Prudential moved, under section 3 of the Federal Arbitration Act, to compel arbitration of plaintiffs' claims. Prudential relied upon the fact that each plaintiff had signed a Uniform Application for Securities Industry Registration or Transfer ("Form U-4") which incorporated by reference the arbitration provisions of the NASD Code. The plaintiffs opposed the motion, arguing that Prudential could not invoke Form U-4 because it is not a party to that agreement, and, in the alternative, that the Code contains an exception for disputes involving the "insurance business" which would preclude arbitration in this case.

Upon considering the contested motion, the district court held that Prudential could seek to enforce the arbitration agreement even though it is not a signatory to Form U-4. Having ruled that Form U-4 applied to the appropriate parties, the court addressed whether the arbitration agreement covered the legal claims pressed by the plaintiffs. Interpreting the scope of the agreement embodied in Form U-4, the court found that the relevant language applied to the plaintiffs' causes of action.

Finally, the court examined the insurance business exception, which would potentially exempt arbitration in this case. While recognizing a liberal federal policy in favor of arbitration, the court nevertheless held that the exception applied on the ground that plaintiffs' claims are "intricately related" to Prudential's insurance business. It added that the looming class action suits against Prudential may raise the same issues as those subject to arbitration. This consideration, in the district court's view, compelled a finding favoring the application of the

_____

2. These lawsuits were consolidated with actions brought by Prudential policyholders before the District Court pursuant to 28 U.S.C. S 1407. Because Prudential sought to compel arbitration only against the plaintiffs, the policyholder claims are not before us in this proceeding.

4

exception. Accordingly, the court denied Prudential's motion under the Arbitration Act. This appeal followed.

B. The Arbitration Provisions

The resolution of the issues in this appeal first calls for a parsing of the relevant documentation and, in particular, the language of Form U-4 itself.3 This form provides that the applicant agreed to:

> arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the ...[NASD] as may be amended from time to time.

Form U-4 further states that each applicant will:

> abide by, comply with, and adhere to all the provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the ... [NASD] as they are and may be adopted, changed or amended from time to time....

Incorporated by reference through these two provisions is the NASD Code of Arbitration. Part I Section One of the Code articulates which matters are eligible for arbitration:

> any dispute, claim, or controversy arising out of or in connection with the business of any member of the [NASD], or arising out of the employment or termination of employment of associated persons(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company:
>
> (1) between or among members;
>
> (2) between or among members and associated persons;

---

3. The relevant language at issue refers to the most current Form U-4 and the NASD Code of Arbitration, as amended in 1993. Although the plaintiffs had argued before the district court that the pre-1993 Code of Arbitration applied, they do not raise that contention on appeal.

> (3) between or among members or associated persons
> and public customers, or others; and

> (4) between or among members, registered clearing
> agencies with which the [NASD] has entered into
> an agreement to utilize the [NASD] arbitration
> facilities and procedures, and participants,
> pledges, or other persons using the facilities of a
> registered clearing agency, as these terms are
> defined under the rules of such a registered
> clearing agency.

Part II Section 8 of the Code mandates arbitration for "[a]ny dispute, claim, or controversy eligible for submission under Part I of this Code between or among members and/or associated persons...."

All the plaintiffs signed Form U-4 as a condition precedent to their employment at Prudential.4 Prudential, however, is not a signatory to the agreement.5 Rather, the "firm" identified in Form U-4, is Pruco Securities Corp., a wholly-owned Prudential subsidiary.

II. Arbitration

A. Prudential's Standing

A threshold inquiry under the Federal Arbitration Act is to determine, under recognized principles of contract law, the validity of, and the parties bound by, the arbitration agreement. As explained by the Supreme Court, " `arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " AT&T Technologies v. Communications Workers of America, et al., 475 U.S. 643,

_____

4. We note that plaintiffs Martin and Schulte signed an earlier version of Form U-4, which differed slightly from the agreement signed by the remaining plaintiffs. The provisions at issue in this appeal, however, are materially identical.

5. The Form U-4 agreement is more correctly understood as between the plaintiffs and the NASD. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 n.2. (1985).

648 (1986) (quoting United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582 (1960)). The identification of the parties bound by the agreement to arbitrate need not be confined to the limited inquiry of identifying the signatories to the arbitration agreement. Rather, the dispositive finding is an " `express' and `unequivocal' " agreement between parties to arbitrate their disputes. Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1512 (3d Cir. 1994) (citations omitted), aff'd, 514 U.S. 938 (1995).

As this court has previously recognized, "a variety of non-signatories of arbitration agreements have been held to be bound by such agreements under ordinary common law contract and agency principles." Barrowclough v. Kidder, Peabody & Co., Inc., 752 F.2d 923, 938 (1985) (citations omitted), overruled on other grounds by Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1112 (3d Cir. 1993). Indeed, courts have been willing to apply third party beneficiary law in examining the contractual standing of a non-signatory party to a dispute, provided there is an expression of the requisite intent between the third party and the plaintiff to arbitrate their claims. See McPheeters v. McGinn, Smith & Co., 953 F.2d 771, 772–73 (2d Cir. 1992) (per curiam); Nesslage v. York Sec., Inc., 823 F.2d 231, 233–34 (8th Cir. 1987); Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1187 (9th Cir. 1986); Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc., 795 F.2d 1111, 1116–17 (1st Cir. 1986); Stone v. Pennsylvania Merchant Group, Ltd., 949 F.Supp. 316, 320–21 (E.D.Pa. 1996).

The parties in this case do not contest the validity of the arbitration clause itself. Rather, they dispute the identity of the parties bound by Form U–4.6 At the outset, we do not find Prudential is without standing here simply because it is not a signatory to the arbitration argument; nor will we deny standing because Pruco is listed as the only"firm" referenced in Form U–4. Instead, we turn to the text of the Form U–4 arbitration agreement to see if there is an express

_____

6. The parties raise this issue in response to this court's direction to address the significance, if any, of Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287 (3d Cir.), cert. denied, 117 S.Ct. 583 (1996), to this case.

7

and unequivocal intent that the plaintiffs would arbitrate their claims against, inter alia, Prudential, and whether "both parties to the contract express an intention to benefit the third party in the contract itself...." Scarpitti v. Weborg, 530 Pa. 366, 372-73, 609 A.2d 147, 150 (1992); see also Restatement (Second) of Contracts S 302(1)(b) (1981).

As stated in Form U-4, the plaintiffs agreed to arbitrate any dispute not only with Pruco, but also with "any other person" where the claim itself would be subject to arbitration under the NASD Code. Pursuant to section 8 of the NASD Code, plaintiffs agreed to arbitrate certain disputes "between or among members and/or associated persons...." There is no question that Prudential is a member of the NASD, and the plaintiffs are associated persons within the meaning of the Code.7  Thus, we conclude, as did the district court, there is a clear and unequivocal intent to arbitrate claims with third parties such as Prudential, and not just Pruco, to the extent they are eligible for arbitration under S 1. Cf. Armijo v. Prudential Insurance Co. of America, 72 F.3d 793, 799 n.7 (10th Cir. 1995) (finding an intent to arbitrate with Prudential as well

_____

7. An "associated person" is defined as:

      every sole proprietor, partner, officer, director, or branch manager of
      any member, or any natural person occupying a similar status or
      performing similar functions, or any natural person engaged in the
      investment banking or securities business who is directly or
      indirectly controlling or controlled by such member....

NASD By-Laws P 1101(q). We find no merit to plaintiff Young's argument that he is not an "associated person" within the meaning of the NASD Code. Indeed, Young's entire theory of recovery is premised on the fact that he was a Prudential employee with authority to trade in securities. Young would certainly be an "associated person" for purposes of the Securities Exchange Act, which uses similar language as the NASD's definition and provides the statutory basis for the NASD. See 15 U.S.C. S 78c(a)(21); Kaplan, 19 F.3d at 1517; Cular v. Metropolitan Life Ins. Co., 961 F.Supp. 550, 556-57 (S.D.N.Y. 1997). Even if Young, as an employee, is not an associated person for purposes of the NASD definition, his degree of involvement in these disputes would, at the very least, place him as a "certain other" under Section 8 of the NASD Code. See Thomas James Associates, Inc. v. Jameson, 102 F.3d 60, 67-68 (2d Cir. 1996).

8

as Pruco through the maintenance of registration with Prudential).

Moreover, it is clear from the text and purpose of Form U-4, that the parties to the agreement intended to benefit such non-signatory, third parties as Prudential. While Form U-4 is only an agreement between the NASD and the applicant, it was adopted as a broader effort by self-regulatory organizations, including the NASD, to regulate the securities industry.[8] See 1 Ian R. MacNeil, et al., Federal Arbitration Law: Agreements, Awards, and Remedies under the Federal Arbitration Act S 13, at 3-8, 43-44 (1996); Stephen J. Ware, Employment Arbitration and Voluntary Consent, 25 Hofstra L.Rev. 83, 146 (1996). The intention, as Form U-4 unambiguously indicates, was not limited to arbitrating disputes between the NASD and the applicant or member "firms" explicitly recognized in the text. Rather, the arbitration agreement and the NASD Code of Arbitration establish certain classes of individuals -- member firms of the NASD, customers, and so on -- who would benefit from the applicant's agreement with the NASD. The applicant, in return, would become a registered broker with the NASD and could properly conduct business under the federal securities laws. Therefore, we have no doubts that the parties to Form U-4 unequivocally intended that each applicant would submit to arbitration against non-signatory third parties such as Prudential. A holding that would restrict the right of these third parties to invoke arbitration because they had not signed Form U-4 would essentially require the NASD and the applicants to seek explicit textual recognition of all intended beneficiaries, whether known or unknown. We think such a requirement would frustrate the purpose and text of Form U-4 and accordingly hold that Prudential may properly seek enforcement of the arbitration clause against the plaintiffs.

This case is distinguishable from Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287 (3d Cir.), cert. denied, 117 S.Ct. 583 (1996), where we held that a non-signatory parent

_____

8. In fact, the Securities Exchange Act of 1934 requires brokers and dealers to register with, and submit to the rules of, the NASD as a condition to trading in securities. 15 U.S.C. S 78o(b)(8).

corporation cannot "by reason of their corporate relationship" enforce an arbitration clause, signed by a wholly-owned subsidiary, absent an express agreement to that effect. Id. at 1297. In Dayhoff, unlike the scenario before us, there was no unambiguous expression of intent between the parties to the arbitration agreement to create a class of intended beneficiaries who might invoke arbitration. Id. at 1296-97. In addition, the Dayhoff panel was particularly concerned that the non-signatory parent corporation had essentially created an "option to accept or reject the arbitration and forum selection clauses...." Id. at 1297. The panel found that the existence of "such a choice belie[d] the existence of an agreement" to arbitrate. Id. Such is not the case here.

B. The Nature of the Dispute

Having found that Prudential has standing to seek enforcement of the arbitration agreement against the plaintiffs, the next step in the analysis is to identify the nature of the dispute at issue and the scope of the arbitration clause. Because arbitration clauses are fundamentally a creature of contract law, the critical focus is on a clear intention to arbitrate a specific claim or dispute between the parties. In the court's undertaking to determine the parties' intent, the analytical tools of ordinary contractual interpretation become relevant. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (citations omitted).

It is important to note that the Federal Arbitration Act provides the authority for the enforcement of arbitration clauses as a matter of federal law and, as such, federal policies govern. Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1982). The Federal Arbitration Act reflects a pervasive federal interest in promoting arbitration and encouraging courts to uphold arbitration clauses. See id. The underpinnings of this strong federal policy in favor of arbitration have been exhaustively reviewed by the Supreme Court, and need not be reiterated here. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24-26 (1991); Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219-220 (1985); Moses

10

H. Cone, 460 U.S. at 24-25. However, we will emphasize certain settled principles of federal arbitration law that are relevant here.

Any inquiry into the scope of an arbitration clause must necessarily begin with the presumption that arbitration applies. In considering the nature of the dispute and the scope of the arbitration clause, this court must operate under a "presumption of arbitrability in the sense that `[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " AT&T Technologies, 475 U.S. at 650 (quoting Warrior & Gulf, 363 U.S. at 582-83). Thus, when it cannot be said "with positive assurance" that the parties have clearly and unequivocally excepted a certain dispute from arbitration, the court must compel arbitration. A necessary corollary of this axiomatic rule in favor of arbitration is that doubts in interpreting the precise scope of the arbitration agreement are to be resolved in favor of arbitration. Moses H. Cone, 460 U.S. at 24. While this approach is not a mandate for courts to ignore explicit textual agreements or to reshape the parties' obvious intent, it nevertheless weighs genuine ambiguities against the resisting party. Painewebber Inc. v. Hartmann, 921 F.2d 507, 512-13 (3d Cir. 1990).

With these principles in mind, we turn to the nature of the disputes here in order to determine whether they fall within the scope of the relevant arbitration clause. The plaintiffs have alleged various state violations -- employment, contractual, and tortious in nature -- based on their discharge in retaliation for their refusal to participate in the alleged fraudulent insurance practices of Prudential. Several plaintiffs have also alleged RICO violations in which the requisite predicate acts of racketeering activity involve Prudential's insurance fraud. These plaintiffs allege that RICO standing under 18 U.S.C. S 1964(c) stems from the injury caused by wrongful employment termination.

No party contests the employment nature of the plaintiffs' claims. Indeed, all the causes of action set forth revolve around the damage suffered through Prudential's decision

11

to terminate employment or intentionally interfere with the plaintiffs' business expectations as insurance agents. Unique to these claims, however, is the involvement of Prudential's insurance business in the dispute. The plaintiffs cannot recover under their various theories of liability without necessarily implicating the illegal nature of Prudential's insurance practices. To this extent, the grievances cited by the plaintiffs are accurately described as arising out of the employment or termination of employment, but they nevertheless implicate the legality of certain insurance practices. We cannot simply ignore, as some other courts seem to have done, the insurance aspects of this case. See, e.g., Metropolitan Life Ins. Co. v. Lindsay, 920 S.W.2d 720 (Tex. App. Ct. 1996); Prudential Ins. Co. Of America v. Shammas, 865 F.Supp. 429, 432 (W.D. Mich. 1993); Trumbetta v. Metropolitan Life Ins. Co., 1994 WL 481152 (E.D. Pa. 1994) (unreported disposition). Rather, we identify the issues raised by the plaintiffs in order to determine whether they fall within the intended scope of arbitration.

C. Scope of the Arbitration Agreement and the
        Insurance Exception

Given the nature of the dispute, we address the agreement embodied in Form U-4 and the NASD Code incorporated by reference in order to ascertain whether this controversy falls within the intended scope of arbitration. Form U-4 itself merely provides that the parties agree to arbitrate any dispute that is required to be arbitrated under the NASD Code. The Code's language is broadly drafted and covers:

> any dispute, claim, or controversy arising out of or in connection with the business of any member of the [NASD], or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company....

NASD Code S 1. At the very least, the section's plain language differentiates between two types of disputes, both

12

of which are arbitrable. There is no question that the parties intended to arbitrate any dispute "arising out of the employment or termination of employment". Beyond these employment disputes, claims "in connection with the business of members" are also within the intended scope of arbitration.

The language of the Code carves out an exception where the dispute involves the "insurance business of any member." In these situations, there is a clear intent not to arbitrate but rather to leave the matter within the province of the courts. Less clear, however, is the coverage of this exception, as several ambiguities immediately arise in the clause's interpretation. For example, it is not clear whether the business of insurance exception applies to employment related disputes, to disputes in connection with a member's business, or to both.9 More importantly, neither the Code nor NASD by-laws defines what is meant by the "insurance business" and the intended scope of its coverage. 10

The history of NASD Code S 1 reflects the above conclusions, but sheds little light on the scope of arbitration or the insurance business exception. Before 1993, S 1 made the following claims eligible for arbitration: "any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company...." 58 Fed. Reg. 39,070 (1993). At this point, it was clear that the insurance business exception

_____

9. We note that under settled principles of statutory construction, the doctrine of the last antecedent phrase would suggest that the business of insurance exception applies only to the phrase immediately preceding it which, in this case, is employment disputes. See Norma J. Singer, Statutes and Statutory Construction S 47.26, at 240-41 (5th ed. 1992); 24 Words and Phrases, Last Antecedent 453-66 (1966).

10. Counsel for Prudential would have us rely on such Supreme Court cases as Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119 (1982) which define the "business of insurance" for purposes of the McCarran-Ferguson Act, 15 U.S.C. S 1011 et seq. This suggestion, however, is beside the mark. What Congress intended by "insurance" for purposes of the McCarran-Ferguson Act is simply irrelevant to how the parties before us define insurance and the scope of disputes subject to arbitration.

13

only applied to disputes in connection with a member's business. The stated purpose of the exception was to:

> exclude ... disputes on [the] belief that the number of insurance-only claims involving insurance companies is so disproportionately large in relation to their securities business that to include such claims would unduly burden the arbitration system. In addition, the inclusion of such claims could result in a requirement to arbitrate matters that are intrinsically insurance, that is, matters with respect to which the Association does not believe it should mandate arbitration.

44 Fed. Reg. 75,255 (1979). The intent to be inferred from this phrase is that where the dispute is "insurance-only" or even "intrinsically insurance" it falls beyond the scope of arbitration. But apart from a stated concern regarding the sheer volume of insurance claims, nothing further suggests what is meant by an "intrinsically insurance" dispute or a claim that is "insurance only".

In 1993, however, the NASD amended the section to include the phrase, "or arising out of the employment or termination of employment of associated person(s) with any member". 58 Fed. Reg. at 39,070. The stated intent behind this amendment was to "assure that the arbitration of industry employment disputes may be compelled at the instance of one of the parties to the dispute." Id. at 39,071. Moreover, the NASD intended the newly proposed clause to be read broadly so that employment disputes that also invoked matters "involving public policy issues" would still be arbitrated. Id. at 39,071-72. To illustrate, the amendment provided "that in cases involving employment discrimination claims or claims involving public policy issues, the panel should consist of a majority of public arbitrators." Id. at 39,071. Nevertheless, the NASD did not comment as to the potential interplay between the employment clause and the insurance business exception so as to illuminate the intended scope of arbitrable disputes in that context.

As a result, we are left with an unanswered question that is at the heart of this case -- namely, whether employment disputes that implicate a member's insurance business fall

14

under the insurance business exception. On the one hand, it is clear, from both the language of the text and its history, that employment disputes were unequivocally intended to be arbitrated. This is so even if the employment claim raises policy matters well beyond the narrow legal issue of contract breach or ordinary employment torts. These would include, for instance, discrimination based on age, sex, or race. See 58 Fed. Reg. at 39,071.

On the other hand, the NASD has expressed a clear and unequivocal intent not to arbitrate "insurance-only" or "intrinsically insurance" claims. The contours of an "insurance-only" or "intrinsically insurance" claim are too amorphous to define with precision in the present factual context, especially where it is the exception to a broad arbitration provision. We can easily imagine scenarios, such as the one before us, where a claimant, in order to recover on normally arbitrable disputes, would require the arbitrator to decide insurance issues. Thus, it would be difficult to unambiguously announce, on the basis of the NASD Code and its drafting history, whether the parties intended that these sorts of controversies are "intrinsically insurance" without any further indication of the meaning of the phrase. In the end, we are left wondering to what extent, if any, the desire not to arbitrate "intrinsically insurance" disputes was meant to override the parties' intention to arbitrate employment disputes -- broadly read -- when the controversy implicates both employment and insurance aspects.

Courts that have grappled with this conundrum generally attempt to isolate certain aspects of the dispute and ascertain whether they pose central insurance questions. See, e.g., Young v. Prudential Ins. Co. of America, 688 A.2d 1069, 1081 (N.J. Super. Ct. App. Div. 1997) (looking to whether insurance practices are "at the heart of[the] case"); Vitone v. Metropolitan Life Ins. Co., 943 F.Supp. 192, 198 (D.R.I. 1996) (inquiring whether a "comprehensive evaluation" of the defendant's insurance business would be required to resolve plaintiff's claims); Wojcik v. Aetna Life Ins. and Annuity Co., 901 F.Supp. 1282, 1291-92 (N.D.Ill. 1995) (requiring plaintiff to allege unlawful insurance practices and not merely wrongful employment conduct

directed toward plaintiff); Prudential Ins. Co. of America v. Shammas, 865 F.Supp. 429, 432 (W.D.Mich. 1993) (looking for claims that invoke a "specific[ ]" relationship with insurance); Trumbetta v. Metropolitan Life Ins. Co., 1994 WL 481152 (E.D. Pa. 1994) (unreported disposition) (looking to the "actual basis" of plaintiff's claim).

While it is possible to construe the insurance business exception so that an employee's claim is "intrinsically insurance" or "insurance-only" once the claim requires a resolution of a central insurance question, such an interpretation fails for several reasons. Assuming that the business of insurance exception applies to employment disputes, there is nothing in the NASD Code or its drafting history to indicate the degree of insurance involvement in a dispute that would constitute an "intrinsically insurance" claim. Looking to the purpose behind the exception -- a concern for case volume -- does not aid the inquiry, as no party has made the contention that the types of claims involved here would threaten an overload on securities arbitrators.11

If this court were to determine how the insurance exception applies to employment disputes, without any guidance as to the meaning of the phrase "intrinsically insurance," our decision very well might frustrate the intent of the parties. However, because federal arbitration law requires doubts to be resolved against the resisting party, we need not grope for a rule that would resolve the ambiguity here.12 Instead, we are not inclined to expand the

_____

11. The district court surmised that the driving force behind the exception is a general lack of expertise by securities arbitrators to consider insurance claims. Although this may be true, neither the NASD Code nor its drafting history posits this as a concern to the parties.

12. In fact, the text of the Code itself phrases the exception as any dispute "involving" the insurance business while the NASD's expression of purpose seems to limit the exception to "insurance-only" or "intrinsically insurance" claims. Because the word "involvement" indicates a more relaxed relationship to insurance issues than does the word "intrinsically" we are faced with a patent ambiguity of the parties' intent. Under settled contract principles, we must give effect to "all circumstances" behind the contractual term including "the principal purpose of the parties." Restatement (Second) Contracts S 202(1).

16

exception without a clear indication of the parties' purpose and intended scope of coverage.13

We ultimately cannot say with positive assurance that the language of Form U-4 and the NASD Code, as well as their drafting histories, indicate the parties' desire not to arbitrate employment disputes that require the resolution of an insurance business issue. There is only one clear expression of intent here -- that employment disputes are subject to arbitration while "intrinsically insurance" claims are not. Because this court cannot say with certainty what is meant by "intrinsically insurance" claims, and whether it embraces employment disputes, our mandate is clear: a presumption in favor of arbitration applies and doubts in construction are resolved against the resisting parties. Thus, we will reverse the district court's ruling that the insurance business exception exempted the plaintiffs' claims from arbitration in this case.14

III. Policy Grounds and Arbitration

In addition to the textual interpretation of the insurance business exception, the district court offered another reason for its denial of arbitration: a concern for potential "inconsistent results and inefficiencies" given the dozens of putative class actions against Prudential. Although the court recognized that this factor alone cannot justify a reformation of a binding arbitration contract, it nevertheless considered the peculiar class action ramifications as a persuasive factor against committing the disputes to an arbitration forum.

While we share the district court's apprehension toward inconsistent results and inefficiencies caused by

_____

13. Indeed, if this text were a statute, the ordinary canons of statutory interpretation would mandate a narrow construction of the exception in the presence of ambiguity. See Norma J. Singer, Statutes and Statutory Construction S 47.11 (5th ed. 1992).

14. With respect to the plaintiffs' RICO cause of action, we note that the Supreme Court has already approved arbitration of RICO claims pursuant to a pre-existing arbitration agreement. See Shearson / American Express, Inc. v. McMahon, 482 U.S. 220 (1987).

17

arbitration, we cannot frustrate the enforcement of the arbitration clause pursuant to the Federal Arbitration Act on the basis of this concern. As the Supreme Court noted in Moses H. Cone:

> [F]ederal law requires piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.

460 U.S. at 20 (emphasis in original) (footnotes omitted). Although the Court in Moses H. Cone considered the possibilities of duplicative and piecemeal litigation in terms of federal abstention doctrine, the interest in enforcing federal arbitration law is the same in other situations. See, e.g., Barrowclough, 752 F.2d at 938 (holding that an arbitration clause against certain parties may be enforced even if other parties were not subject to arbitration); Dayhoff, 86 F.3d at 1298 (enforcing an arbitration clause even if a party may have to "litigate its claims in three different fora with three different sets of rules").

The Eighth Circuit Court of Appeals, for example, specifically rejected the view that arbitration was improper when multi-district litigation may create duplicative litigation and a potential for inconsistency. In re Piper Funds, Inc., Institutional Government Income Portfolio Litig., 71 F.3d 298, 303 (8th Cir. 1995). As the Supreme Court broadly stated, the Federal Arbitration Act was "motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered, and we must not ... allow the fortuitous impact of the Act on efficient dispute resolution to overshadow the underlying motivation." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 220 (1985) (footnote omitted). Accordingly, we will also reverse the district court's ruling based on judicial efficiency and consistency.

IV. Conclusion

For the foregoing reasons, the order of the district court will be reversed, to the extent it denied Prudential's motion

18

compelling arbitration, and the matter will be remanded for further appropriate proceedings.

19

GREENBERG, Circuit Judge, dissenting in part.

While I agree with the majority that Prudential may seek enforcement of the arbitration clause, I respectfully dissent from its conclusion that the plaintiffs' claims are subject to arbitration. I will set forth my reasons briefly. The NASD Code, following its 1993 amendment, reads as follows:

> This Code . . . is prescribed . . . for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, or [dispute, claim  or controversy] arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company
> . . .

The underscored words were added in 1993 and I have inserted "dispute, claim or controversy" within them for clarity because obviously arbitration is of a dispute, claim or controversy.

Prudential, which contends that the insurance exception is inapplicable in an employment dispute, see br. at 18, effectively would rewrite the Code so that it reads as follows:

> This Code . . . is prescribed . . . for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company, or [for the arbitration of any dispute, claim or controversy] arising out of the employment or termination of employment of associated person(s) with any member.

I say that Prudential would rewrite the Code to read as I have indicated because the rewritten version renders the exception for "disputes involving the insurance business" inapplicable in disputes arising out of employment or its termination. Relying on its rewritten version of the Code, Prudential explains that "[o]nly disputes predicated directly on Prudential's contractual or other insurance-related

20

obligations to policyholders, rather than its role and obligations as an employer, properly fall within the scope of the business of insurance exception." Br. at 3.

Prudential's position is untenable. I am well aware that the courts look generously at the scope of arbitration clauses. Nevertheless, except in certain situations in which statutes require arbitration, a party only need arbitrate disputes which he or she agrees to arbitrate. Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1294 (3d Cir.), cert. denied, 117 S.Ct. 583 (1996). In my view, it is perfectly clear that the exception from arbitration for disputes involving the insurance business must apply to employment disputes because the exception directly follows the provision for their arbitration. While it could be argued that the exception does not apply to disputes "arising out of or in connection with the business of any member of the Association," as that phrase is more remote than the employment disputes provision from the exception, it cannot be argued tenably that the exception jumps over the immediately preceding employment disputes provision to modify only the more remote phrase. It is one thing to construe a contract to require the arbitration of a dispute. But it is quite another to rewrite a contract to require arbitration. A court simply cannot do that.

The majority indicates that "[t]he plaintiffs cannot recover under their various theories of liability without necessarily implicating the illegal nature of Prudential's insurance practices." Majority Opinion at 12. The majority thus sets forth that "the grievances cited by the plaintiffs are accurately described as arising out of the employment or termination of employment, but they nevertheless implicate the legality of certain insurance practices." Id. at 12. I agree with these points and thus I would affirm because the obligation to arbitrate employment disputes excludes "disputes involving the insurance business of any member which is also an insurance company." (Emphasis added.) Indeed, I regard this case as fairly straightforward. After all, a dispute implicating the legality of insurance practices surely is a dispute involving an employer's insurance business.

21

The majority concludes that there must be arbitration here in part because of ambiguities in the Code. It indicates that "it is not clear whether the business of insurance exception applies to employment related disputes, to disputes in connection with a member's business, or to both," id. at 13, and that is uncertain "whether employment disputes that implicate a member's insurance business fall under the insurance business exception." Id. at 14-15. I respectfully disagree because as I have indicated the provision for arbitration of employment disputes directly precedes the insurance business exception.

The majority expresses concern about the scope of the insurance business exception. I certainly agree that the scope could be a problem if the insurance business aspects of the dispute are tangential to the main controversy. But in this case insurance disputes are at the heart of the controversies for, as the majority points out, the plaintiffs "cannot recover . . . without necessarily implicating the illegal nature of Prudential's insurance practices" and the plaintiffs' grievances, though arising out of the employment or its termination, "nevertheless implicate the legality of certain insurance practices." Id. at 12. Indeed, if the exception to the obligation to arbitrate employment controversies for disputes involving the insurance business is inapplicable here, it is difficult to understand when it ever would be applicable.

I respect the majority's point concerning the presumption in favor of arbitration and, as I have indicated, I am aware that in cases of doubt it is appropriate to order arbitration. But to me this case is fairly clear and the generalized policy in favor of arbitration cannot overcome the plain meaning of the Code.

I also point out that the New Jersey state courts would resolve this case differently. In Young v. Prudential Ins. Co., 688 A.2d 1069 (N.J. Super. Ct. App. Div.), certif. denied, 694 A.2d 193 (N.J. 1997), the Superior Court of New Jersey, Appellate Division, construed the same Code provision involved here to permit an action in court in a similar case. In fact, Young found the district court opinion in this very case to be "compelling" and followed it. Id. at 1079. Accordingly, I have no doubt that the New Jersey

22

state courts will follow Young and not this case. See Dewey v. R.J. Reynolds Tobacco Co., 577 A.2d 1239, 1244 (N.J. 1990) (holding that "decisions of a lower federal court are no more binding on a state court than they are on a federal court not beneath it in the judicial hierarchy") (citation omitted). It thus appears that in New Jersey the determination of whether there will be arbitration in controversies of the nature involved here, even against the same employer, now will depend on whether a state or federal court makes the determination.

In sum, I conclude that the district court opinion at In re: Prudential Ins. Co. of Am. Sales Practices Litig., 924 F. Supp. 627, 640-42 (D.N.J. 1996), is right on the mark as is the opinion of the state court in Young, 688 A.2d 1069. Thus, I would affirm.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

23