Michael L. BAZZONE, Jr., t/d/b/a
Bazzone Insurance Agency,
Appellant,

v.

NATIONWIDE MUTUAL; Nationwide
Mutual Fire Insurance Company; Na-
tionwide General Insurance Company;
Nationwide Property and Casualty In-
surance Company; Nationwide Varia-
ble Life Insurance Company, n/k/a
Nationwide Life and Annuity Compa-
ny.

No. 03-4659.

United States Court of Appeals,
Third Circuit.

Argued Sept. 15, 2004.

Decided Feb. 15, 2005.

Avrum Levicoff, Dianne S. Wainwright (Argued), Levicoff, Silko & Deemer, Pittsburgh, PA, for Appellant.

David J. Armstrong, Dickie, McCamey & Chilcote, Pittsburgh, PA, Christopher Landau, Edwin J. U (Argued), Kirkland & Ellis, Washington, DC, for Appellees.

Before: ALITO, AMBRO and FISHER, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Appellant Michael L. Bazzone appeals from the final orders of the District Court granting Appellee Nationwide Mutual Insurance Company's motions to compel arbitration and confirming the arbitrators' award in Nationwide's favor.[1] We will affirm the District Court's orders.

Bazzone, a Nationwide agent, submitted a Uniform Application for Securities Industry Registration or Transfer, known as a "Form U–4," to Nationwide, which Nationwide in turn filed with the National Association of Securities Dealers ("NASD"). In the Form U–4, Bazzone "agree[d] to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in Question 8." The Form U–4 identified the NASD as the organization with which he was registering. In pertinent part, the NASD's Code of Arbitration Procedure prescribes arbitration for "any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company." NASD Rule 10101 (1997).

Bazzone filed the complaint at issue here advancing several claims against Nationwide based on Nationwide's alleged "redlining" practices,[2] which Bazzone claims caused injury to his business.

The District Court had subject matter jurisdiction over Bazzone's complaint under 28 U.S.C. §§ 1331[3] and 1367, and had jurisdiction over Nationwide's motions to compel arbitration under the Federal Arbi-

---

1. We may only vacate an arbitration award in limited circumstances, such as when an award was procured by corruption or fraud. *See* 9 U.S.C. § 10. Although Bazzone appeals the District Court's confirmation of the arbitration award, he offers no statutorily sufficient basis on which we might overturn that award. We therefore focus on the arbitrability issues.

2. "Redlining" is defined as the refusal to issue insurance policies to certain persons or groups because they live or are located in an area predominantly inhabited by persons of a particular ethnicity, income level, and/or marital status.

3. We have federal question jurisdiction because Bazzone advances a claim for violations of the Fair Housing Act, 42 U.S.C. § 3604.

tration Act, 9 U.S.C. § 4. We have appellate jurisdiction pursuant to 9 U.S.C. § 16 and 28 U.S.C. § 1291. We review *de novo* a district court's resolution of "legal questions concerning the applicability and scope of an arbitration agreement." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 53 (3d Cir. 2001) (citation omitted).

The framework in this Circuit for analyzing whether a claim is arbitrable is well settled. "[D]istrict courts need only 'engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir.1998) (citation omitted). "In conducting this limited review, the courts must apply ordinary contract principles, with a healthy regard for the strong federal policy in favor of arbitration." *Id.* (citations omitted); *see also Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) (Federal Arbitration Act "mandates that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'") (citations omitted). Cardinal among the "ordinary contract principles" we should apply is the tenet that "[i]f the language used by the parties is plain, complete, and unambiguous, the intention of the parties must be gathered from that language, and from that language alone, regardless of what the actual or secret intentions of the parties may have been." 11 Richard A. Lord, *Williston on Contracts* § 31.4 (4th ed.1999).

Bazzone argues that (1) the applicable arbitration provisions do not cover his "redlining" claims; (2) that even if the arbitration provisions cover his "redlining" claims, the exception in those provisions for claims relating to "insurance business"

exempts his claims from compulsory arbitration; and (3) that the arbitration provisions do not extend to his claims that Nationwide breached any settlement agreement.

■ We reject these contentions. We agree with Nationwide that the Form U–4 signed by Bazzone, together with NASD Rule 10101, clearly and unambiguously require arbitration of Bazzone's "redlining" claims. Particularly in light of the strong presumption in favor of arbitrability that binds us, we must follow the unambiguous language of the arbitration provisions compelling arbitration of Bazzone's "redlining" claims.

■ We foreclosed Bazzone's argument that his "redlining" claims fall within the Code's "insurance business" exception in *In re Prudential*, 133 F.3d 225 (3d Cir. 1998). There, construing the same arbitration language in a Form U–4 and the Code as obtains here, we held, in effect, that the "insurance business" exception cannot be given any definitive construction in the arbitration context because the term "insurance business" is ambiguous. This ambiguity led us to apply the presumption in favor of arbitrability in *In re Prudential*, and we are bound to do the same here.

■ Finally, Bazzone's claims based on Nationwide's alleged breach of a purported settlement of Bazzone's "redlining" claims are also arbitrable. Rule 10101 of the Code, applying broadly to "any dispute, claim, or controversy," encompasses claims arising out of a purported settlement of claims themselves covered by the Rule. Indeed, we have held explicitly that "[s]ettlement agreements [ ] between parties to a collective bargaining agreement containing a broad arbitration clause are arbitrable when the underlying disputes are arbitrable, except when the parties expressly

exclude the settlement agreements from arbitration." *United Steelworkers of America, AFL–CIO–CLC v. Lukens Steel Co., Div. of Lukens, Inc.*, 969 F.2d 1468, 1475 (3d Cir.1992) (citation omitted). Accordingly, Bazzone's claims regarding Nationwide's alleged breach of a settlement agreement are arbitrable as well.

For these reasons, we will affirm the District Court's orders granting Nationwide's motions to compel and affirming the arbitrators' award in Nationwide's favor.

AMBRO, Circuit Judge, Dissenting.

I do not agree that the National Association of Securities Dealers ("NASD") Form U–4 applies to Bazzone's allegations in this case. I therefore respectfully dissent.

Form U–4, and the NASD Code provision it incorporates, require the arbitration of

> any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company ... between or among members and associated persons.

NASD Code § 10101. My colleagues in the majority conclude "that the Form U–4 signed by Bazzone, together with NASD Rule 10101, clearly and unambiguously require arbitration of Bazzone's 'redlining' claims." This conclusion ignores a threshold question. Do the arbitration provisions in Form U–4 and NASD Rule 10101 apply to claims, such as those alleged here, that do not relate to securities and that Bazzone claims he therefore did not intend to arbitrate?

In order to answer this question, we must look at what Bazzone intended at the time he signed Form U–4, for it is well settled that, despite our recognition of a presumption of arbitrability, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT & T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *see also Medtronic Ave Inc. v. Advanced Cardiovascular Sys. Inc.*, 247 F.3d 44, 55 (3d Cir.2001) (parties not required to arbitrate dispute that falls outside the scope of the arbitration agreement).

Bazzone signed Form U–4 so that he could sell variable annuity life insurance, which is considered a security and thus subject to securities regulations. Any dispute Bazzone had with Nationwide arising out of the sale of these life insurance products would clearly fall within the scope of the arbitration provision in Form U–4. But Bazzone's redlining allegations here relate not to the sale of variable annuity life insurance, but to the sale of homeowners' and automobile insurance—products that are not considered securities.

There is no indication that, by signing Form U–4, Bazzone intended to agree to submit *all* disputes arising between himself and Nationwide to arbitration. First, Bazzone sold homeowners' and automobile insurance products *before* he signed Form U–4. Second, the sale of life insurance is apparently a very small percentage of Bazzone's business. In this context, if a person sells X and Y without an agreement to arbitrate, and then signs an agreement to arbitrate claims as to Z because he wishes to sell Z products and to do so he is required to arbitrate related claims, logic leads away from arbitrating claims regarding X and Y absent an agreement explicitly extending arbitration to X and Y. Put

another way, common sense (laymen's logic) cannot conclude that Bazzone intended, by signing Form U–4, to agree to arbitrate disputes arising out of the sale of home-owners' and automobile insurance—sales that he was engaged in prior to entering any agreement implicating the NASD rules and that constituted the main portion of his business.

Although our precedents considering whether disputes are arbitrable under Form U–4 do not explicitly consider whether the substantive dispute must involve securities for Form U–4 to apply, these cases arose in contexts where securities were directly at issue or where the parties had expressly agreed that Form U–4 would apply. *See, e.g., John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 140 (3d Cir.1998) (parties agreed that the substantive dispute fell within the scope of the arbitration clause in Form U–4); *First Liberty Inv. Group v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir.1998) (arbitration of breach of employment agreement was required when the employment agreement itself incorporated the NASD Code); *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 177 (3d Cir.1998) (no question as to the threshold applicability of Form U–4 because the employee was one who was employed to "deal directly with the public in purchase and sale of over-the-counter securities").[4]

Here, unlike our other cases in this area, the substantive dispute does not involve securities, and Bazzone does not appear to have agreed to the application of Form U–4 and the NASD Code to the non-securities part of his business. Concluding, as the majority does, that Form U–4 and NASD Rule 10101 require arbitration in this case is, in my view, an unwarranted expansion of the scope of the arbitration agreement between Bazzone and Nationwide. An arbitration provision designed for the securities industry does not, absent clear agreement, transfer to a situation where securities are not involved at all. *Cf. IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 652 (7th Cir.2001) (Posner, J.) (noting, in holding that a dispute did not fall within the insurance business exception to arbitration under the NASD rules, that "this is not a case of an arbitration program designed for the securities industry being yanked into a class of disputes that do not involve securities."). I perceive no choice but to dissent from my colleagues' conclusion that "clear[ ] and unambiguous[ ]" language calls for arbitration.[5]

---

4. Our decision in *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225 (3d Cir.1998), does not, in concluding that arbitration of the Prudential sales agents' insurance sales fraud allegations was required under Form U–4 and the NASD Code, mention what kind of insurance the alleged fraud scheme involved. However, we noted in that case that one former employee's "entire theory of recovery [was] premised on the fact that he was a Prudential employee with authority to trade in securities." *Id.* at 229 n. 7. Presumably, if there were a threshold issue in that case whether Form U–4 governed the

dispute, it would have been raised by the former Prudential employees who resisted arbitration.

5. Because I conclude that Form U–4 does not require arbitration in this case, I need not reach the issue whether Bazzone's claims fall into the "insurance business exception" in NASD Rule 10101. If I reached that question, my analysis would be somewhat different from that of my colleagues in the majority. I am not convinced that *In re Prudential* forecloses Bazzone's argument that the insurance business exception applies here. In that

case, we broadly stated that the insurance business exception requires arbitration of claims that are "intrinsically insurance" and that we could not define that phrase with any certainty in relation to the requirement that employment disputes be arbitrated. *In re Prudential*, 133 F.3d at 234. We therefore applied the presumption in favor of arbitrability to hold that employment disputes do not fall within the exception. *Id.* Concluding, as the majority does, that the insurance business exception also does not apply to Bazzone's claims, which do not arise from his employment with Nationwide but rather from Nationwide's business practices, renders the exception surplusage because it is inapplicable to either category of disputes for which NASD Rule 10101 requires arbitration (employment disputes and disputes arising out of, or in connection with, an NASD member's business).

In *IDS Life Ins.*, however, Judge Posner wrote that the purpose of the insurance business exception is to "keep arbitrators away from issues that are peculiar to insurance such as reserves, reinsurance, actuarial calculations, rates, coverage, and mandatory terms." 266 F.3d at 652. Bazzone's redlining allegations implicate Nationwide's sales practices, not any issues that are "peculiar to insurance." Under the reasoning of *IDS Life Ins.*, I would therefore hold that if Form U–4 applied to Bazzone's claims, the insurance business exception would not exempt them from arbitration.