In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2009

IDS Life Insurance Company and American
Express Financial Advisors, Inc.,

Plaintiffs-Appellants,

v.

Royal Alliance Associates, Inc., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 95 C 1204, 95 C 1212--Wayne R. Andersen, Judge.

Argued January 23, 2001--Decided September 12, 2001

Before Posner, Easterbrook, and Ripple,
Circuit Judges.

Posner, Circuit Judge.  The plaintiffs appeal from an order confirming a decision by an arbitration panel that denied the plaintiffs all the relief they had sought. The plaintiffs are a securities broker-dealer and a life insurance company, both owned by American Express and both members of the National Association of Securities Dealers (the insurance company sells variable annuities, which are considered securities). The defendants are broker-dealers that compete with the plaintiffs. They also belong to the NASD and are affiliated with insurance companies that sell variable annuities and compete with the plaintiff insurance company, IDS. The plaintiffs charge that beginning in 1992 the defendants tortiously interfered with the plaintiffs' contracts with their broker employees, for example by falsely representing to the brokers that the one-year covenants not to compete that the brokers had agreed to in their contracts with the plaintiffs were unenforceable. In 1995 the plaintiffs brought this suit against the defendants (and other parties, not before us on this appeal) for tortious interference with contract, basing federal jurisdiction on diversity of citizenship. The defendants demanded

arbitration, citing rules of the NASD that require members to arbitrate "any dispute . . . arising out of the employment . . . with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company."

At the defendants' behest, the district court stayed the suit while the parties arbitrated. After preliminary skirmishes discussed in our opinions in IDS Life Ins. Co. v. SunAmerica, Inc., 103 F.3d 524, 525-26 (7th Cir. 1996), and 136 F.3d 537, 539-41 (7th Cir. 1998), and in several unpublished orders, the arbitration was conducted in 154 sessions over a period of 14 months beginning in January of 1997, resulting in an award so incomprehensible that three years later the judges and the parties are still trying to figure it out.

The plaintiffs sought from the arbitrators an injunction against the defendants' "raiding" the plaintiffs' brokers, and damages for loss of business caused by the previous raids. The defendants sought a declaration that the covenants not to compete in the plaintiffs' contracts with their brokers were unenforceable. In May of 1998 the arbitrators rendered their decision. They denied all the requests of the parties for relief but stated that "where the Respondents [the plaintiffs in the district court, the two American Express companies] are concerned, all actions of the panel . . . pertain only to [the broker-dealer firm]. No contentions pertaining specifically to IDS Life Insurance Company were presented to the panel."

The plaintiffs asked the district court to vacate the panel's award on the ground that the arbitrators had "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made." This is one of the grounds on which the Federal Arbitration Act, which is applicable to this arbitration because the parties' dispute arises out of a contract that evidences a transaction involving commerce, see 9 U.S.C. sec. 2; Southland Corp. v. Keating, 465 U.S. 1, 10-11 (1984), authorizes the vacation of an arbitral decision. 9 U.S.C. sec. 10(a)(4); Commonwealth Coatings Corp. v.

Continental Casualty Co., 393 U.S. 145, 147 (1968); Flender Corp. v. Techna-Quip Co., 953 F.2d 273, 279 (7th Cir. 1992); Eljer Mfg., Inc. v. Kowin Development Corp., 14 F.3d 1250, 1253 (7th Cir. 1994). Persuaded that the arbitral award was incomplete, the district judge in February of 1999 remanded the case to the arbitrators, who in June of that year responded that the second sentence that we quoted from the award ("No contentions pertaining specifically to IDS Life Insurance Company were presented to the panel") was intended to have been the basis of the first sentence (about the panel's actions pertaining only to the broker-dealer affiliate). They added: "The panel gave full consideration to all issues and claims presented to it. When read in its entirety, our Award encompasses all of the parties to this action as filed"--and the list that follows includes IDS Life Insurance Company.

The plaintiffs again asked the district court to vacate the arbitrators' award as incomplete. They pointed out that the award says nothing about IDS's damages claims, and in addition they argued that the award is internally inconsistent because it denies relief to the plaintiffs while refusing to hold that the covenants not to compete, on which the plaintiffs' claim of tortious interference is based, are unenforceable. If they were unenforceable, soliciting the plaintiffs' employees to break them would not be tortious interference with contract; there would be nothing to break. The plaintiffs also argued that IDS's claims were not arbitrable, because it is an insurance company and its claims involve the insurance business. The district court rejected these arguments and confirmed the award, precipitating this appeal by the plaintiffs, who also appeal from the denial of their motion for sanctions, an issue we defer to the end of this opinion.

We sympathize with the plaintiffs' dissatisfaction with the arbitrators' response to the direction to clarify their award. The response is unclear, and its lack of clarity is of a piece with their response to previous requests for clarification. See 136 F.3d at 539-40. The plaintiffs point us to portions of the arbitration record which suggest that

the arbitrators lacked the professional competence required to resolve the parties' disputes. The length of the arbitration hearing (154 separate sessions over a period of 14 months that followed two years of prehearing preparation), a recent overhaul by the NASD of its arbitration procedures, and the inarticulateness and unresponsiveness of the arbitrators, give color and substance to the plaintiffs' criticisms.

But the grounds for challenging an arbitration award are narrowly limited, reflecting the voluntary contractual nature of commercial arbitration. Within exceedingly broad limits, the parties to an arbitration agreement choose their method of dispute resolution and are bound by it however bad their choice appears to be either ex ante or ex post. Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 709 (7th Cir. 1995); Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc., 935 F.2d 1501, 1505 (7th Cir. 1991); Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 679 (7th Cir. 1983); UHC Management Co. v. Computer Sciences Corp., 148 F.3d 992, 997 (8th Cir. 1998); Ford v. Nylcare Health Plans, 141 F.3d 243, 247-48 (5th Cir. 1998); Davis v. Prudential Securities, Inc., 59 F.3d 1186, 1193 (11th Cir. 1995). The plaintiffs did not have to join the NASD (though they could not become broker-dealers without doing so); by choosing to do so they became contractually bound by the association's rules governing the resolution of employment disputes. Austin v. American Association of Neurological Surgeons, 253 F.3d 967, 968 (7th Cir. 2001). They point to nothing in the rules that gave them a contractual right to insist on arbitrators abler, swifter, or more articulate than the ones they got. They point to nothing that entitles us to scour the record for signs of arbitral incompetence. The grounds on which the plaintiffs can attack the award are limited to those set forth in the Federal Arbitration Act. (The plaintiffs wisely do not invoke the controversial nonstatutory ground, "manifest disregard of the law," which we have limited to the situation in which the arbitral award directs the parties to violate the law. George Watts & Sons, Inc. v. Tiffany & Co., 248 F.3d 577, 580-81 (7th Cir. 2001).) Unless there is a specific ground

for vacating an award, it must be confirmed. Menke v. Monchecourt, 17 F.3d 1007, 1009 (7th Cir. 1994); Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 708 (2d Cir. 1985); Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986).

The only ground pertinent to this case is the one we quoted earlier, that the arbitrators "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made." We take "mutual" and "final" to mean that the arbitrators must have resolved the entire dispute (to the extent arbitrable) that had been submitted to them, Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers, 802 F.2d 247, 250-51 (7th Cir. 1986); Fradella v. Petricca, 183 F.3d 17, 19 (1st Cir. 1999), and "definite" to mean (much as in the case of injunctions, Fed. R. Civ. P. 65(d)) that the award is sufficiently clear and specific to be enforced should it be confirmed by the district court and thus made judicially enforceable. Flender Corp. v. Techna-Quip Co., supra, 953 F.2d at 279-80; Diapulse Corp. of America v. Carba, Ltd., 626 F.2d 1108, 1111 (2d Cir. 1980). We note parenthetically that some cases deem an arbitral award final if it finally resolves a separate claim, or the liability of a particular party, even if other claims or other parties remain before the arbitrators. Publicis Communication v. True North Communications, Inc., 206 F.3d 725, 729 (7th Cir. 2000); Hart Surgical, Inc. v. Ultracision, Inc., 244 F.3d 231, 233-34 (1st Cir. 2001). These cases create a regime that is similar to the one that Fed. R. Civ. P. 54(b) creates for federal litigation, yet is in tension with the absence from the Federal Arbitration Act of any counterpart to that rule. But it is not a tension that need be resolved in this case.

The requirements of finality and definiteness are ones more of form than of substance. They must not be confused with whether the arbitrators' award was correct or even reasonable, since neither error nor clear error nor even gross error is a ground for vacating an award. Major League Baseball Players Ass'n v. Garvey, 121 S. Ct. 1724, 1728 (2001); United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987); George

Watts & Sons, Inc. v. Tiffany & Co., supra, 248 F.3d at 579; Flexible Mfg. Systems Pty. Ltd. v. Super Products Corp., 86 F.3d 96, 100 (7th Cir. 1996). Maybe if the arbitrators said "We'd rather play golf today, so rather than consider the parties' claims we're simply denying all of them," the resulting award would not be considered a "mutual, final, and definite award," or, perhaps, any award at all; though a more comfortable home for that conclusion might be 9 U.S.C. sec. 10(a)(3), which allows an award to be vacated if the arbitrators were "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced." But that is not argued, and need not be pursued; and putting the golf hypothetical to one side, therefore, if the district judge is satisfied that the arbitrators resolved the entire dispute and can figure out what that resolution is, he must confirm the award.

Pursuing the analogy to Rule 65(d) of the civil rules, we hold that the question for the district court and for us is not whether the arbitrators' reasoning is incomplete in the sense that a syllogism would be incomplete if it lacked its major or its minor premise but whether the award itself, in the sense of judgment, order, bottom line, is incomplete in the sense of having left unresolved a portion of the parties' dispute. Inconsistency, therefore, with which the plaintiffs tax the arbitrators (probably wrongly, since a tortious-interference claim can fail even if the contracts alleged to be tortiously interfered with are enforceable), is relevant only if it renders the award incomplete or indefinite. The alleged inconsistency here (the arbitrators' having on the one hand refused to grant the plaintiffs any relief and on the other hand refused to declare the contracts they're alleged to have interfered with enforceable) does not render the award incomplete--to deny relief to both sides on inconsistent grounds is still to deny relief--or unclear: denial is denial.

There is, however, one disquieting note in the district judge's treatment of this issue. He stated that in "rejecting the

[defendants'] equally broad request for exoneration for every instance that they retained the services of plaintiffs' agents, the arbitrators simply recognize that there may be individual cases in which plaintiffs may show wrongful conduct, but that those are left to another day and forum to decide." If this means that the arbitrators severed the plaintiffs' specific claims of wrongful conduct and so failed to resolve the entire dispute that had been referred to arbitration in accordance with the NASD's rules, then they failed to make a mutual, final, and definite award, unless it is indeed true that courts may graft Rule 54(b) onto the Federal Arbitration Act though not authorized by Congress to do so. The judge went on to say, however, that "the arbitrators fully decided all matters before them." In light of this statement we interpret the award to mean only that while the arbitrators indeed resolved the entire dispute that had been referred to them, they did not wish to preclude arbitration of future disputes between the parties that somehow are not precluded by their decision, and so they refused to issue a blanket pass to the defendants. Fair enough. But we emphasize that any claims arising out of the dispute giving rising to this litigation, the dispute the arbitrators were asked to resolve and we think did resolve, are closed to further litigation by the principles of res judicata and collateral estoppel. Closed to litigation; not necessarily to arbitration. Although res judicata and collateral estoppel usually attach to arbitration awards, Pryner v. Tractor Supply Co., 109 F.3d 354, 361 (7th Cir. 1997); Rudell v. Comprehensive Accounting Corp, 802 F.2d 926, 929-30 (7th Cir. 1986); Benjamin v. Traffic Executive Ass'n Eastern Railroads, 869 F.2d 107, 110-11 (2d Cir. 1989), they do so (if they do so) as a matter of contract rather than as a matter of law. The preclusive effect of the award is as much a creature of the arbitration contract as any other aspect of the legal-dispute machinery established by such a contract. W.R. Grace & Co. v. United Rubber Works, 461 U.S. 757, 765 (1983); Brotherhood of Maintenance of Way Employees v. Burlington Northern R.R., 24 F.3d 937, 940 (7th Cir. 1994). Arbitration is customized, not off-the-rack, dispute resolution. But plaintiffs are out of court anyway, because this

litigation has covered the waterfront. Whether or not they could ask the NASD to reopen the question is up to the NASD; they can't ask the courts to reopen the judgment already entered (and about to be affirmed). That judgment has preclusive effect as a matter of law.

More serious is the plaintiffs' contention that the Delphic terms in which the arbitrators responded to the district court's question about the disposition of IDS's claims should be interpreted as a refusal by the arbitrators to resolve those claims, thus rendering the award incomplete. Why they didn't just say they had decided to deny IDS's claims eludes us; but it seems to us that this must have been what they meant when they said: "When read in its entirety, our Award encompasses all of the parties to this action." If they didn't realize that IDS had claims--if they simply forgot that IDS had submitted claims for damages--then in issuing an award denying all relief to IDS the arbitrators might not only have been committing a grievous error, but have failed to render a final, in the sense of a complete, award. Charity in interpretation entitles us to adopt the alternative assumption that the arbitrators did not think IDS was making any distinct claim worth discussing. Cf. Remmey v. PaineWebber, Inc., 32 F.3d 143, 150-51 (4th Cir. 1994).

All this assumes, of course, that IDS was contractually bound to arbitrate its disputes with the defendants (or consented to do so, even if not obligated). It did not agree to arbitrate disputes "involving the insurance business of any member which is also an insurance company," and while it is a member of the NASD it is also an insurance company. The purposes of the exclusion are to keep arbitrators away from issues that are peculiar to insurance, such as reserves, reinsurance, actuarial calculations, rates, coverage, and mandatory terms, and to prevent arbitrators from being swamped with insurance claims, which are apt to be more numerous than securities claims. In re Prudential Ins. Co. of America Sales Practice Litigation All Agent Actions, 133 F.3d 225, 232-34 (3d Cir. 1997). No technical insurance issue is involved in the alleged tortious interference by the

defendants with the plaintiffs' employees, however; nor is the allegation at all typical of claims against insurance companies.

The plaintiffs do charge that the defendants engaged in "twisting" (also known as "flipping," "churning," and "replacement"), which means trying to persuade an insured to replace his existing insurance policy (and in this case it would usually be a variable annuity--a security) with a new policy in order to eliminate the residual income that the existing insurer derives from its policy, or, in the case of health insurance (not involved here), in order to curtail the insured's coverage by requiring him to execute a new preexisting-condition clause. United States v. Forzese, 756 F.2d 217, 219 (1st Cir. 1985). The plaintiffs claim that the defendants, not content with obtaining new business through the brokers whom it "stole" from the plaintiffs, "twisted" the brokers' existing customers so that the brokers' old business would be switched from the plaintiffs to the defendants. Since the brokers would obtain commissions on the new policies, twisting was one of the inducements that the defendants dangled before the plaintiffs' brokers to get them to defect. But the fact that twisting might be at once a motive or method for the defendants' tortious activity (or both), a reason for the plaintiffs' one-year covenant not to compete, and a cause of the plaintiffs' injury does not mean that the arbitrators would have to know anything about the insurance business in order to be able to arbitrate the plaintiffs' claims competently. They wouldn't have to know anything more than we know, which is the opening sentences in this paragraph. No technical issue of insurance law or of the economics, regulation, or business customs of insurance was thrust upon the arbitrators (and this was apparent, moreover, when the demand for arbitration was made), and the twisted insurance policies were also securities, so this is not a case of an arbitration program designed for the securities industry being yanked into a class of disputes that do not involve securities.

We come last to the issue of sanctions. In June 1998, a month after the

arbitrators' first award (the one the district court in February of the following year remanded to the arbitrators for clarification), the defendants scampered off to a New York state court and asked it to confirm the arbitrators' award. The choice of forum was curious, since it was the federal district court in Chicago that at the defendants' urging had stayed the suit filed by the plaintiffs so that the matter could be referred to arbitration. But stranger than the choice of forum was the reason given for the choice, that the district court in Chicago did not have jurisdiction to confirm the award--which is ridiculous. Baltimore & Ohio Chicago Terminal R.R. v. Wisconsin Central Ltd., 154 F.3d 404, 407 (7th Cir. 1998); In re VMS Securities Litigation, 21 F.3d 139, 145 (7th Cir. 1994); LaPrade v. Kidder Peabody & Co., 146 F.3d 899, 902-03 (D.C. Cir. 1998). It was the court in which the suit had originally been filed and arbitration ordered years before the defendants filed suit in another state to enforce the arbitration award that they had obtained.

   The district court in February of 1999 ordered the defendants to dismiss their New York suit; they did so; and they make no argument that their jurisdictional theory, the ostensible though obviously not the true reason for their flight to New York, was reasonable, let alone that it was correct. Nevertheless the district court without any discussion of the reasonableness of the theory denied the plaintiffs' motion for sanctions under 28 U.S.C. sec. 1927.

   That statute authorizes sanctions against a lawyer who vexatiously (which is to say gratuitously and injuriously) multiplies proceedings, an excellent description of the defendants' action in seeking confirmation of the award in a different court from the one in which the suit giving rise to the arbitration had been pending for three years. It was the defendants, remember, who had wanted arbitration in the first place. They could back in 1995 have moved under 9 U.S.C. sec. 4 for an order to arbitrate in any court (state or federal, see Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 271-73 (1995)) in which they could obtain jurisdiction over the plaintiffs and they could later have

sought confirmation of a favorable award in that court. Instead they waited three years until, doubtless worried by some critical comments in our previous decisions, 103 F.3d at 529; 136 F.3d at 542-43, they decided to seek a friendlier forum than the one in which till then they had contentedly acquiesced in litigating.

In ordering the defendants to dismiss their New York suit, the district judge noted that they had ignored relevant authority, "bas[ing] their dubious and disingenuous view to the contrary on inapposite authority." He also said that they had acted in "blatant disregard" of his order staying litigation pending completion of the arbitration, and expressed "doubts" that jurisdictional anxieties were the "real motive" behind the New York suit. Yet in denying the motion for sanctions he made no reference to these earlier statements of dismay with the defendants' conduct.

What he did say was that--

(1) He had a strong inclination to deny the motion for sanctions because of his "own philosophy," which is skeptical of sanctions;

(2) He thought the expense incurred by the plaintiffs in defending against the defendants' suit in New York, $100,000, was not large enough to warrant a sanction, as it was not "hugely disproportionate to the whole amount" of lawyers' fees incurred in the overall litigation;

(3) The defendants had obeyed his order to drop the New York suit;

(4) After reading the defendants' explanation for why they thought he might not have jurisdiction to confirm the arbitration award, he thought that maybe the New York suit wasn't so unreasonable after all;

(5) It was a tough, scrappy litigation with no holds barred; presumably the plaintiffs' lawyers, had they been in the position of the defendants' lawyers, would have done the same thing, that is, institute a frivolous lawsuit.

These are not grounds for a denial of

sanctions. If they were, a district judge's discretion to award or refuse to award sanctions would be wholly unconfined, and in consequence the standard of appellate review (abuse of discretion, Chambers v. NASCO, Inc., 501 U.S. 32, 35 (1991); Ross v. City of Waukegan, 5 F.3d 1084, 1089 n. 6 (7th Cir. 1993); Harrison v. Dean Witter Reynolds, Inc., 974 F.2d 873, 886 (7th Cir. 1992)) would be not just deferential, but empty. So clear is it that the defendants filed a frivolous suit in a New York court in order to complicate this already far too complicated and absurdly protracted litigation, to the cost of the plaintiffs, that the district judge committed an abuse of discretion in refusing to sanction the defendants' counsel under section 1927. The defendants' choice of forum, the ground, and the timing prove their bad faith. "[W]hen an attorney recklessly creates needless costs the other side is entitled to relief." In re TCI Ltd., 769 F.2d 441, 446 (7th Cir. 1985). That's this case.

The judgment confirming the arbitration award is affirmed, but the denial of the motion for sanctions is reversed and the plaintiffs are directed within 14 days to submit a statement of the legal fees and other expenses that they incurred in defending against the New York suit.