**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 5 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DOUGLAS L. WILSON,

        Plaintiff - Appellee,

    v.

AMERICAN INVESTMENT
SERVICES, INC., an Illinois
corporation,

        Defendant - Appellant.

No. 00-1528

(D. C. No. 00-M-534)

(D.Colorado)

**ORDER AND JUDGMENT**  *

Before **TACHA** , Chief Circuit Judge, and   **ANDERSON**  and **MURPHY** , Circuit
Judges.

Appellant American Investment Services, Inc. ("AIS") brings this

interlocutory appeal challenging the district court's order denying its motion to

compel the arbitration of Appellee Douglas Wilson's ("Wilson") claim for bad

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

faith breach of an insurance contract. We exercise jurisdiction pursuant to 9 U.S.C. § 16(1)(C) and affirm.

## FACTS

A.   General Background

At all relevant times, Wilson worked for AIS as a stock broker. Pursuant to his employment with AIS, Wilson paid premiums for errors and omissions liability insurance coverage. Wilson paid these premiums directly to AIS, who then obtained insurance coverage for Wilson and other similarly situated brokers from a third-party insurer. On or about May 21, 1997, AIS notified Wilson and other similarly situated brokers that AIS was terminating the outside errors and omissions coverage. AIS informed its brokers, however, that it would continue to collect the same amount of money from them, and that it would use the monies collected to establish its own "litigation reserve account."

B.   Arbitration Proceedings

In May 1998 one of Wilson's customers, Kendra M. MacAlpine ("MacAlpine"), brought a number of claims against Wilson, AIS and others.[1]

---

[1]MacAlpine alleged that Wilson engaged in unauthorized trading and converted funds from her account. Award at 2, App. to Appellant's Br ("App.")
(continued...)

-2-

These claims were submitted to arbitration before the National Association of Securities Dealers, Inc. ("NASD"), pursuant to the NASD's Code of Arbitration Procedure. At this time, Wilson asked AIS to cover his litigation expenses and indemnify him for any liability he incurred to MacAlpine as a result of the arbitration. Wilson's position was that AIS contractually agreed to provide him with errors and omissions liability coverage through the litigation reserve account, on the same terms as that originally provided by third-party insurers prior to May 1997.

When AIS denied Wilson's request for coverage, Wilson filed a cross-claim against AIS in the arbitration, entitled "Insurance," asserting that AIS breached a contract of insurance with Wilson, illegally acting to deny him the errors and omissions coverage he had paid for. [2] Resp't Wilson's Resp. to Claimant's Statement of Claim, Countercl. and Cross-cl. at 16, ¶ 1, App. at 48. During the course of the arbitration proceedings, Wilson also attempted to introduce evidence

<hr>

[1](...continued)
at 54. She brought claims against Wilson for securities fraud, common law fraud, breach of fiduciary duty, conversion, and violations of Colorado and federal securities regulations. Id. Her claims against AIS and others were based on theories of *respondeat superior*. Id.

[2]Wilson brought two other cross-claims against AIS, one entitled "Dealings with MacAlpine," the other entitled "The Electronic Trail." Wilson prevailed on the former; the latter was dismissed with prejudice by the arbitration panel during the arbitration hearing. Award at 4, App. at 56. Wilson also asserted counter-claims against MacAlpine. However, none of these other arbitration claims are relevant on appeal.

establishing that AIS breached the contract of insurance in bad faith and acted to

inflict mental anguish on him and/or his wife.  At oral argument on appeal, AIS

stated that it objected to the admission of such evidence during the arbitration

hearing on the grounds that Wilson did not plead a claim for bad faith breach

and/or that Wilson failed to provide required discovery on that claim.    [3]  In

response to AIS' procedural objection(s), the arbitrators reviewed Wilson's

pleadings and, after determining that Wilson had not pled the claim, dismissed

Wilson's claim for bad faith breach without prejudice.    [4]  At the conclusion of the

proceedings, the arbitration panel ruled in favor of Wilson on his remaining cross-

---

[3]The transcript from the arbitration proceeding is unclear as to AIS' exact objection.  At oral argument AIS could not recall whether it objected on the grounds of inadequate pleading, inadequate discovery, or both.

[4]Specifically, the arbitration panel stated as follows:

> Okay.  Now the panel has reviewed the pleadings again and Mr. Zarlingo, we do not believe that either [inaudible] or mental anguish was pleaded originally.  And I think that – it is the panel's feeling that it would be – it would prejudice, really at ths point, both sides. . . .  This is a procedural decision, based on the fact that <u>we do not see that bad faith and mental anguish or physical condition were plead</u> in the original pleadings.  So it has nothing to do with what may be reality . . . , but we just think procedurally, we are not going to entertain it <u>at this time</u>.

Tr. of Arb. Hr'g Starting Monday 1/25/99 at 9-10, App. at 103-04 (emphasis added).

claims, including his claim that AIS breached the parties' contract of insurance, awarding him $14,000. [5]

C.     Federal Lawsuit

On or about March 10, 2001, Wilson filed this lawsuit in the United States District Court for the District of Colorado. In his Complaint, Wilson asserted claims against AIS for "Willful and Wanton Breach of Contract" and "Bad Faith Breach of Insurance Contract." Compl. at 3, App. at 7. Both of these claims were based on AIS' refusal to provide errors and omissions coverage to Wilson during the MacAlpine arbitration. Compl. at ¶¶ 16 and 21, App. at 7-8.

AIS originally responded to Wilson's claims with a motion to dismiss under the doctrines of " *res judicata* claim preclusion and *res judicata* fact preclusion." Order on Def's Mot. for Summ. J. at 1, App. at 120. The district court converted this motion to one for summary judgment, granting it with respect to Wilson's claim for willful and wanton breach of contract, but denying it with respect to Wilson's claim for bad faith breach. Regarding the bad faith breach claim, the

---

[5]The $14,000 was awarded to Wilson on both his "Insurance" cross-claim and his "Dealings with MacAlpine" cross-claim, and was awarded jointly and severally against AIS and one of its associates, A. Philip Chang. The award does not articulate what portion of the $14,000 award was attributable to the "Insurance" claim versus the "Dealings with MacAlpine" claim. See Award at 4, App. at 56.

court noted that "Colorado law makes a distinction between a breach of contract that is characterized as willful and wanton conduct and the tort of bad faith breach of insurance contract." Id. at 2, App. at 121. Based on the arbitrators' treatment of Wilson's bad faith claim, see supra note 4, the district court concluded that Wilson's "tort [claim] was not litigated in the arbitration proceeding," and that Wilson did not have "a fair opportunity to present it." Id.[6]

Having lost its motion to dismiss, AIS moved to compel arbitration of the bad faith breach claim, asserting that Wilson was contractually required to arbitrate his tort claim pursuant to the Uniform Application for Securities Registration or Transfer form ("U-4 Form") he filed with the Securities and Exchange Commission ("SEC") prior to his employment with AIS, as well as the Uniform Submission Agreement ("USA") he filed in the arbitration proceeding. In relevant part, the U-4 Form states as follows:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions or by-laws of the organization[] . . . and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

U-4 Form at 4, ¶ 5, App. at 145. The relevant portion of the USA states:

> The undersigned party [Wilson] hereby submits the present matter in controversy, as set forth in the Statement of Claim, Answers, Cross

---

[6]AIS does not and cannot appeal the validity of this ruling at this time.

> Claims and all related Counterclaims and/or Third Party Claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.

USA at 1, ¶ 1, App. at 160.

Wilson does not dispute the fact that he was bound by the provisions in the U-4 Form and/or the USA, nor does he challenge the general validity of these provisions. He simply argues that these agreements expressly incorporate all provisions of the NASD's Code of Arbitration Procedures, and that Rule 10101 of this Code expressly exempts his bad faith breach claim from compulsory arbitration. In relevant part, Rule 10101 states as follows:

> This Code of Arbitration Procedures is prescribed and adopted pursuant to Article VII, Section 1(a)(iv) of the By-Laws of the Association for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of any associated person(s) with any member, <u>with the exception of disputes involving the insurance business of any member which is also an insurance company.</u>

NASD Code of Arbitration Procedures § 10101 (emphasis added). Wilson argues that AIS acted as an "insurance company" under Rule 10101 by agreeing to provide liability insurance in exchange for the premiums collected from Wilson and other similarly situated brokers, and that his bad faith coverage dispute is thereby exempt from compulsory arbitration because it involves AIS' insurance business.

-7-

The district court agreed with Wilson, denying AIS' motion to compel on the basis that Wilson's claim for bad faith breach was exempt from compulsory arbitration under Rule 10101. The district court specifically found that "the only claim to be litigated in this case is [Wilson's] tort claim for bad faith breach of insurance contract and that on this claim the relationship between [Wilson] and [AIS] was that of an insured and an insurance company." Order Denying Mot. to Compel Arb. at 1, App. at 163. It is this order from which AIS appeals.

## DISCUSSION

## I.

As indicated above, this is an interlocutory appeal involving only one question: Did the district court err in denying AIS' motion to compel the arbitration of Wilson's claim for bad faith breach of an insurance contract? "We review a district court's grant or denial of a motion to compel arbitration de novo, applying the same legal standard employed by the district court." Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 796 (10th Cir. 1995); see also Williams v. Imhoff, 203 F.3d 758, 762 (10th Cir. 2000).

In general, any inquiry into the scope of an arbitration clause must begin with the presumption that arbitration is required, and "an order to arbitrate the particular grievance should not be denied unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Tech. v. Communications Workers of Am., 475 U.S. 643, 650 (1986) (internal quotation omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," Williams, 203 F.3d at 764 (internal quotation omitted), and any ambiguities in the arbitration agreement must be resolved in favor of arbitrability. Armijo, 72 F.3d at 797. Applying these principles, the question to be resolved is whether the contract provisions set forth above compel the conclusion that Wilson's bad faith claim must be submitted to compulsory arbitration, or whether the "insurance business" exception of Rule 10101 applies.

As a threshold matter, AIS asserts that the NASD arbitrators, rather than the courts, should determine whether Wilson's claim is arbitrable under the NASD Rules. AIS relies entirely on an October 1996 NASD filing with the SEC, stating that "eligibility determinations under the NASD Arbitration Rules were deemed subject to determination by the arbitrators, as opposed to the Director of Arbitration as had been the NASD's previous policy." Appellant's Br. at 21 (citing D. Robbins, Securities Arbitration Procedure Manual, § 5-10, at 198 (3rd Ed. 1998)). We are unpersuaded.

In Dean Witter Reynolds, Inc. v. Howsam, 261 F.3d 956 (10th Cir. 2001), we held that courts should decide the arbitrability issue "'unless there is "clea[r]

and unmistakabl[e]" evidence'" that the parties agreed to arbitrate the issue.        Id. at 964 (quoting   First Options of Chicago, Inc. v. Kaplan    , 514 U.S. 938, 944 (1995)) (further citations omitted).  Although the U-4 Form and the USA expressly incorporate all of the NASD rules and procedures, the NASD ruling relied upon by AIS does not constitute "clear and unmistakable" evidence of the parties' intent to have arbitrability questions resolved by the arbitrators.  The NASD ruling apparently clarifies only who should make arbitrability decisions within the NASD, as between the arbitrators assigned to a given case and the NASD's Director of Arbitration.  It does not appear to speak about who should make arbitrability decisions as between the NASD arbitrators and the courts. Accordingly, it does not provide "clear and unmistakable evidence" that AIS and Wilson agreed to arbitrate the question of arbitrability.

We turn now to the question of whether Wilson's bad faith claim is subject to compulsory arbitration.  As set forth above, Rule 10101 exempts from compulsory arbitration all "disputes involving the insurance business of any member which is also an insurance company."  The purpose of this rule is "to keep arbitrators away from issues that are peculiar to insurance, such as reserves, reinsurance, actuarial calculations, rates,      coverage , and mandatory terms, and to prevent arbitrators from being swamped with insurance claims, which are apt to be more numerous than securities claims."      IDS Life Ins. Co. v. Royal Alliance

Assocs., Inc., 266 F.3d 645, 652 (7th Cir. 2001) (emphasis added). Under this provision, we must determine (i) whether the bad faith coverage dispute between AIS and Wilson is one involving the insurance business of AIS, and (ii) whether AIS qualifies as an "insurance company" for purposes of the exception. We answer both of these questions in the affirmative.

First, we conclude that Wilson's claim involves the insurance business of AIS because the relationship of the parties is that of an insurer and insured and Wilson's claim implicates primarily issues of insurance law. See In re Prudential Ins. Co. of Am. Sales Practice Litig., 133 F.3d 225, 232 (3rd Cir. 1998) ("The intent to be inferred from this phrase is that where the dispute is 'insurance-only' or even 'intrinsically insurance' it falls beyond the scope of arbitration.") (emphasis added); Cular v. Metropolitan Life Ins. Co., 961 F. Supp. 550, 558 (S.D.N.Y. 1997) (holding that employee/plaintiffs' claims against the employer for "fraudulent inducement to enter into a life insurance contract" fell within the insurance business exception because they were brought "by the plaintiffs in their capacity as insurance policyholders").[7] Regarding the relationship of the parties,

---

[7]Cf. Armijo, 72 F.3d at 800 (compelling arbitration of the plaintiffs' employment discrimination claims because "the dispute as framed by plaintiffs is predicated on the civil rights laws, not the insurance laws, and they are predicated on Prudential's role as an employee rather than as an insurer."); IDS Life Ins. Co., 266 F.3d at 653 (rejecting application of the insurance business exception because "[n]o technical issue of insurance law or of the economics, regulation, or business
(continued...)

-11-

it is noteworthy that by ruling in Wilson's favor on his "Insurance" cross-claim, the arbitration panel necessarily concluded that AIS entered into and breached a contract of insurance with Wilson. Implicit in this finding is a determination that the monies AIS collected from Wilson and other similarly situated brokers constituted premium payments collected in exchange for a promise to provide insurance coverage, and that AIS' relationship with Wilson was therefore that of insurer and insured.

The substance of the actions by AIS confirms that inference. As the facts set out above show, when AIS discontinued its brokers' outside insurance coverage in May 1997, AIS voluntarily stepped into the shoes of the third party insurers, establishing a "litigation reserve account" and "requir[ing] Wilson and its other registered representatives" to "pay a certain sum" into the reserve, in "the same amount as had previously been paid to obtain insurance from [the] third party" insurers. Appellant's Br. at 8-9. Thus, although the district court provided no reasoning for its decision, we agree with its conclusion that the relationship of the parties was that of an insurer and insured. See Order Denying Mot. to Compel Arb. at 1, App. at 163.

_____

[7](...continued)
customs of insurance was thrust upon the arbitrators"); Mouton v. Metropolitan Life Ins. Co., 147 F.3d 453, 457 (5th Cir. 1998) (refusing application of the exception because the plaintiff's discrimination claim involved the "employer's statutory obligations as an employer" rather than its obligations as an insurer).

Regarding the nature of the claim, Wilson's claim is nothing more than a coverage claim arising in tort. Specifically, Wilson asks the district court to determine whether AIS acted tortiously in denying Wilson's request for insurance coverage related to the MacAlpine arbitration. His claim raises no issues of securities or employment law which would ordinarily be subjected to arbitration under Rule 10101.

AIS also qualifies as an "insurance company" for purposes of Rule 10101. It is undisputed that AIS registered itself with the Illinois Department of Insurance. [8] Moreover, as explained above, AIS actively and voluntarily engaged in the business of selling an insurance product to Wilson and similarly situated brokers for a fee, rendering itself a *de facto* insurance company for purposes of Rule 10101. [9]

---

[8]AIS did not refute Wilson's contention on appeal that AIS is "registered with the Illinois Department of Insurance" as a business that "provides variable annuity insurance products." Appellee's Br. at 20.

[9]We reach this determination based solely on the purpose of Rule 10101, discussed above, to exempt from compulsory arbitration all issues related to the provision of insurance coverage. IDS Life Ins. Co., 266 F.3d at 652. We do not rely on Colorado law, as Wilson urged us to do in his brief. See Appellee's Br. at 15-16. Although application of the Colorado state insurance code provisions cited by Wilson would likely lead us to the same result, we believe that what the Colorado legislature intended by the term "insurance company" is irrelevant in determining what the drafters of the NASD intended by that same term. See In re Prudential Ins. Co. of Am. Sales Practice Litig., 133 F.3d at 232 n. 10 ("What Congress intended by 'insurance' for purposes of the McCarran-Furguson Act is simply irrelevant to how the parties before us define insurance and the scope of disputes subject to arbitration.").

In response, AIS contends that Rule 10101 cannot apply because it is a securities firm that does not engage primarily in the business of selling insurance to the public for a profit. Appellant's Br. at 22, 25. We are not persuaded. For purposes of Rule 10101, AIS' status as a securities firm does not exclude other business activities. It is sufficient that AIS held itself out as an insurance company to at least one state agency and in its dealings with Wilson, selling him an insurance product for a fee. Indeed, in substance there is no discernible difference where Wilson was concerned between the insurance arrangements before and after the outside insurance company was involved. Accordingly, on the unique facts of this case, we hold that Rule 10101 unambiguously exempts Wilson's claim for bad faith breach from the compulsory arbitration procedures of the U-4 Form and the USA.

## II.

AIS also asserts that the district court erred in denying its motion to compel without providing it an evidentiary hearing on the application of Rule 10101's insurance exception. We review this claim under an abuse of discretion standard, Riddle v. Mondragon, 83 F.3d 1197, 1208 (10th Cir. 1996), and find no such abuse in this case. As discussed above, there is more than enough in the record to support the district court's application of Rule 10101, without the need for any further factual inquiry. AIS was afforded the opportunity to submit briefs and

-14-

articulate its argument fully before the district court. Any documents or affidavits that AIS wished to have before the district court could have been and should have been submitted as exhibits to its filings in support of its motion to compel. [10]

## CONCLUSION

Based on the foregoing, the judgment of the district court denying AIS' motion to compel arbitration is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[10]At oral argument there was discussion about whether, by submitting or attempting to submit his insurance claims to arbitration, Wilson waived his right to challenge the arbitrability of his bad faith claim. After reviewing the record, we conclude that such a claim is not properly before us because AIS failed to adequately develop it in the district court, as well as in its opening brief on appeal. See Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992) (holding that we will not consider arguments raised for the first time on appeal); State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (noting that issues not addressed in the appellant's opening brief are deemed waived); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1547 (10th Cir. 1995) (holding that parties cannot raise arguments for the first time at oral argument). Even assuming *arguendo* that AIS' waiver claim was properly before us, we would nevertheless reject it. The record discloses that although Wilson may have been ready and willing to waive his Rule 10101 arguments and proceed on his bad faith claim in the arbitration proceeding, it was AIS who prevented arbitration of the claim by raising procedural objections that caused the arbitrators to dismiss Wilson's bad faith claim without prejudice.