IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———

No. 10-10172

———

CHESTER SHANE MCVAY,

Plaintiff - Appellant

v.

HALLIBURTON ENERGY SERVICES, INC.,

Defendant - Appellee

———

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:07-CV-1101

———

United States Court of Appeals
Fifth Circuit

**FILED**
April 22, 2015

Lyle W. Cayce
Clerk

Before DAVIS and CLEMENT, Circuit Judges, and ROSENTHAL, District Judge.[*]

PER CURIAM[**]:

Chester Shane McVay appeals from the district court's judgment confirming an arbitration award issued in favor of his former employer, Halliburton Energy Services. The award enjoined McVay from using certain Halliburton documents or tangible things and awarded damages. The only issue remaining before us is whether the district court erred because the injunction

———

[*] District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10172

was not definite, making the award subject to vacatur under 9 U.S.C. § 10(a)(4). We find that the injunction met the requirements for confirming the arbitration award, and we affirm.

## I.     BACKGROUND

Chester McVay worked at Halliburton as an engineer from 2001 to 2005. During his tenure, he signed an Intellectual Property Agreement (the "IP Agreement") that made clear Halliburton's rights in the confidential and proprietary information McVay learned, had access to, or worked on during his employment. Before he left Halliburton, McVay copied a gigabyte of data from his work computer and removed hundreds of physical files. During his exit interview, McVay told his almost-former employer that he viewed himself as the owner of a software program he had worked on at Halliburton.

McVay's conduct led Halliburton to suspect that he had copied, taken, and kept valuable secret and proprietary information. Halliburton invoked the arbitration clause in the IP Agreement against McVay. In the arbitration, Halliburton alleged that McVay had breached the Agreement and sought damages and an injunction.

The parties arbitrated under the Halliburton Dispute Resolution Rules before an arbitrator appointed by the American Arbitration Association. The arbitrator issued her award on March 21, 2007, finding that McVay had breached the IP Agreement by removing and copying Halliburton's confidential information, including data and engineering specifications about Halliburton's packers and performance envelopes. The arbitrator found that this was technological information developed at a large cost to Halliburton. The arbitrator also found that McVay was not credible about whether he removed and copied this material. The arbitrator awarded Halliburton $24,042.27 in damages for breach of contract, $150,000 in attorneys' fees, $20,944.15 in expert witness costs, and injunctive relief.

No. 10-10172

The injunction required McVay to return all the documents and things he took from Halliburton concerning its products or services, certify that he had done so and had not given the documents or things to third parties, and refrain from "utilizing in any fashion any paper and electronic copies of any documents and tangible things that concern [Halliburton] products or services."

McVay moved to vacate the award on a number of grounds, including that the injunction was not "definite, clear and precise." Halliburton cross-moved to confirm. The district court referred the case to a magistrate judge, who recommended denying McVay's motion to vacate and granting Halliburton's motion to confirm. McVay objected to the magistrate judge's recommendation, arguing in relevant part that it failed to address whether the arbitrator's injunction violated Rule 65(d) of the Federal Rules of Civil Procedure and therefore should be vacated under 9 U.S.C. § 10(a)(4).

The district court adopted the magistrate judge's recommendations and McVay appealed. This appeal was stayed after McVay filed for Chapter 7 bankruptcy protection in August 2010. Oral argument was reset after McVay's bankruptcy case was closed in December 2014. The only issue that remains is McVay's challenge to the injunction.

## II.    DISCUSSION

### A.    The Standard of Review

Judicial review of an arbitration award is "exceedingly deferential." *Petrofac, Inc. v. DynMcDermott Petroleum Ops. Co.*, 687 F.3d 671, 674 (5th Cir. 2012) (quoting *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007)). Vacatur is permitted only on the narrow grounds described in the Federal Arbitration Act ("FAA"). *See Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009). We review the factual findings a district court makes in confirming an arbitration award for clear error; we review the

No. 10-10172

district court's conclusions of law *de novo*. *See Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 452–53 (5th Cir. 2013).

## B.     Analysis

McVay argues that the district court should have vacated the award under 9 U.S.C. § 10(a)(4) because the arbitrator imperfectly executed her powers by issuing an indefinite injunction.  As a threshold matter, Halliburton argues that McVay waived this ground for challenging the award by basing it on the repudiated "manifest disregard" standard.  *See Citigroup*, 562 F.3d at 358 (explaining that "manifest disregard of the law" is not an independent ground upon which an arbitration award may be rejected).  McVay specifically cited 9 U.S.C. § 10(a)(4) in his motion to vacate and alleged imperfect execution of powers.  His objections to the magistrate judge's recommendation included the failure "to address McVay's request to vacate a portion of the Arbitrator's injunction under 9 U.S.C. § 10(a)(4)."  McVay did not waive this argument.

A district court may vacate an arbitration award when "the arbitrator[] exceeded [her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).  The Fifth Circuit has not specifically addressed the standard for determining whether an arbitration award, particularly one granting an injunction, is definite.  In *Antwine v. Prudential Bache Securities, Inc.*, 899 F.2d 410, 413 (5th Cir. 1990), the court found that the arbitrators had not imperfectly executed their powers under § 10(a)(4) because "[t]he award and statement provided by the arbitrators . . . was clear and concise [and] lacked any hint of ambiguity," but did not hold that this was a standard for all arbitration awards or state how it applied to awards containing injunctions.

Other circuits have addressed the issue more directly.  The Second Circuit has described an arbitral award that is "final and definite" as one that "resolve[s] all the issues submitted to arbitration . . . definitively enough so

4

that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998) (emphasis omitted). The Third Circuit has held that to be definite, an arbitration award must be "sufficiently specific as to be capable of implementation." *See United Mine Workers of Am. Dist. No. 5 v. Consol. Coal Co.*, 666 F.2d 806, 809–10 (3d Cir. 1981). The Seventh Circuit has held that an arbitration award is definite if it "is sufficiently clear and specific to be enforced," *IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 650 (7th Cir. 2001), and indefinite if it is "so badly drafted that the party against whom the award runs doesn't know how to comply with it," *Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 315 F.3d 721, 725 (7th Cir. 2002) (citing *IDS Life Ins.*, 266 F.3d at 650).

McVay argues that the injunction in the arbitration award issued against him should be evaluated under the same standard that applies to injunctions issued by courts. Rule 65(d) requires every order granting an injunction to "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." FED. R. CIV. P. 65(d)(1). Without conceding that Rule 65(d) applies, Halliburton argues that the injunction meets its requirements.

Other circuits have found Rule 65(d) relevant to deciding whether an injunction in an arbitration award is "final and definite." *See Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1110–11 (2d Cir. 1980) (applying Rule 65(d) because under 9 U.S.C. § 13, an arbitral award reduced to a judgment in confirmation proceedings has the same force and effect as an injunction issued by the court); *IDS Life Ins.*, 266 F.3d at 650–51 (interpreting the requirement that the arbitrator issue a definite award "to mean (much as in the case of injunctions, FED. R. CIV. P. 65(d)) that the award is sufficiently clear and specific to

5

No. 10-10172

be enforced should it be confirmed by the district court and thus made judicially enforceable"); *Comedy Club, Inc. v. Improv W. Associates*, 553 F.3d 1277, 1287 (9th Cir. 2009) (holding that the arbitrator exceeded his authority by issuing an injunction broader than Rule 65(d) allowed). But case law also shows that the Rule 65(d) requirements are not strictly applied to arbitration awards. For example, Rule 65(d)(1)(A) requires courts issuing injunctions to state the reasons for issuance, while arbitrators are not required to give reasons for their awards. *Compare United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award."); *Antwine*, 899 F.2d at 413 ("It has long been settled that arbitrators are not required to disclose or explain the reasons underlying an award.") *with* FED. R. CIV. P. 65(d) ("Every order granting an injunction and every restraining order must . . . state the reasons why it issued.").

We need not decide whether all of the Rule 65(d) requirements apply to arbitration awards granting injunctive relief. This injunction is final and definite under *Antwine*, the standards described by other circuits, and Rule 65(d).

The injunction stated as follows:

> a)  McVay and those acting in concert with him are enjoined from utilizing in any fashion any paper and electronic copies of any documents and tangible things that concern [Halliburton] products or services;
>
> b)  McVay and those acting in concert with him are ordered to return within 10 days (to the extent not already returned) all paper and electronic copies of all documents and tangible things concerning [Halliburton] products and services, including but not limited to any such paper or electronic copies delivered by McVay to any third party;
>
> c)  McVay shall, within 10 days of the date of this Award, certify by sworn statement that neither he nor anyone with access to the "hytech7" email address possess or control any electronic copies of documents or things currently held by McVay's counsel;

6

> d)    McVay shall, within 10 days of the date of this Award, certify by sworn statement that no electronic or other copies of any documents or things received at the "hytech7" address from McVay that concern [Halliburton] products, services or processes have been provided to any third party or that all such copies have been returned to [Halliburton]; and
>
> e)    McVay shall, within 10 days of the date of this Award, certify by sworn statement that he has not delivered to anyone outside of [Halliburton], other than those with access to the "hytech7" address or James Castaneda, any paper or electronic copies of any version of any document or recordings relating to [Halliburton] products, services or processes.

ROA 48–49.

McVay argues that the provision enjoining him from "utilizing in any fashion any paper and electronic copies of any documents and tangible things that concern [Halliburton's] products or services" is indefinite because it is unlimited in time, does not define "utilization," and is not restricted to paper or electronic copies of the documents or things he took from Halliburton when he resigned. McVay argues that he can "only guess what kinds of documents" and "what kind of 'utiliz[ation]'" he is enjoined from. He also argues that the failure to define "utilization" and to provide an expiration date violated the rule that an injunction prohibiting otherwise lawful conduct must be limited in both time and scope.

The record shows that, read in context, "any paper and electronic copies of any documents and tangible things that concern [Halliburton] products or services" is limited to the copies of Halliburton's information about its products or services that McVay took with him when he resigned from Halliburton and retained in violation of the IP Agreement. The arbitrator's award discusses McVay's misconduct that necessitated the injunction, describing his "wholesale download of his office computer" onto a thumb drive, his removal of "boxes of

No. 10-10172

[Halliburton] hard copies," and his "inconceivable" refusal to "admit to removing confidential material or copying material on the thumb drive during his deposition or prior to the hearing." ROA 38. The arbitrator found that McVay's use or retention after January 4, 2006 of documents or things concerning Halliburton's products or services that McVay took when he left Halliburton breached the IP Agreement.

In context, the injunction covers the copies of electronic documents and physical files McVay took from, and retained after leaving, Halliburton, concerning its products or services, obtained in doing his job or within the knowledge he acquired as a Halliburton employee. Read as a whole and in context, the injunction required McVay to return the copies of the documents and things he took when he left, concerning Halliburton's products and services, and prohibited him from using copies of these documents and things in the future. At oral argument, both parties agreed that this is what the provision is properly read to mean. *Cf. Rorie v. Edwards*, 48 F. App'x 102, 2002 WL 31016457, at *5 (5th Cir. 2002) (applying Rule 65(d) and stating: "We are satisfied that the court used the word 'document' to identify the plans found to be trade secrets, and giving the injunction this interpretation, it is not overbroad."). The absence of a time limit or a definition of "utilize" do not make the injunction indefinite.

The injunction in particular and the award as a whole provided McVay fair notice of what he may, and must not, do, and are clearly capable of being implemented and enforced. The district court did not err in entering judgment confirming the award.

AFFIRMED.