NO. 07-09-00195-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



APRIL
28, 2011

 



 

DENVER CITY ENERGY ASSOCIATES, L.P., APPELLANT

 

v.

 

GOLDEN SPREAD ELECTRIC

COOPERATIVE, INC. AND GS ELECTRIC GENERATING COOPERATIVE, INC., APPELLEES 



 



 

 FROM THE 108TH DISTRICT COURT OF
POTTER COUNTY;

 

NO. 95,028-E; HONORABLE DOUGLAS WOODBURN, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and PIRTLE, JJ.

 

 

OPINION

 

 

            Through
four issues, appellant Denver City Energy Associates, L.P. (Denver City)
appeals the trial court’s judgment confirming an arbitrator’s award in favor of
appellees Golden Spread Electric Cooperative, Inc.,
(Golden Spread) and Golden Spread Electric Generating Cooperative, Inc. (GS
Generating) and the trial court’s order denying Denver City’s motion to
vacate.  We will affirm.

 

Background

Denver City and GS Generating jointly
own Mustang Station, an electric generating facility.  Golden Spread purchases all the energy
generated by the plant.    Its purchase
of electric energy from Denver City is governed by a January 1997 Power
Purchase Agreement (PPA).  All three companies
are parties to a Joint Operating Agreement (JOA) which, among other things,
prescribes the allocation of fuel costs between Denver City and GS Generating.
From these complex documents, disagreements arose between Denver City and the
other two parties.  We previously
addressed some disputed matters between Golden Spread and Denver City.[1]  Other issues among the parties emerged
concerning Denver City’s allocation of certain fuel costs to GS Generating
under the JOA and Denver City’s billing procedure under the PPA.  Golden Spread and GS Generating added these
complaints against Denver City to then-pending litigation.  Relying on terms of the PPA and JOA, Denver
City initiated arbitration of the issues. 
The trial court recognized their arbitrability
by order.

The complaints of Golden Spread and
GS Generating against Denver City were docketed separately for arbitration but
consolidated for hearing.  The
arbitration was conducted according to the commercial arbitration rules of the
American Arbitration Association (AAA).[2]  On the alleged liability of Denver City,
Golden Spread and GS Generating sought an award of injunctive relief and
damages.  The JOA and the PPA provided
for hearing the arbitrated issues within thirty days of selection of the
arbitrator.  The arbitrator was then
required to “notify the Parties in writing of the decision within sixty (60)
days of the conclusion of the hearing.” 
A single arbitrator heard the issues during the weeks of May 15 and May
22, 2006.  By order of August 15, 2006,
the arbitrator concluded the award was due within sixty days thereafter.

On October 5, 2006, the arbitrator
issued an award wherein he noted “[t]he subject matter
and the controversies arising out of the relationships between the parties are
complex and difficult to understand.” 
The arbitrator found Denver City breached the JOA and PPA to the injury
of Golden Spread and GS Generating respectively.  The award did not contain an amount of
damages.  Rather, it specified a method
for Golden Spread and GS Generating to calculate past and future damages with
the proviso that these entities provide Denver City their calculations and “all
associated work papers” by November 14, 2006. 
Denver City was directed to cease and desist from its former billing
procedure, which produced damages to Golden Spread and GS Generating, and
required to pay damages as to months before it modified its procedure.  The award further provided “[t]he Arbitrator
shall keep the record open on this matter for a period of forty-five (45) days
from the date of this Award for the limited purpose of addressing any disputes
that arise that are directly related to the computation or payment of damages”
and “if Golden Spread disagrees with [Denver City], the matter will be referred
to the arbitrator for resolution.”

Apparently acting on a motion by
Golden Spread and GS Generating and response by Denver City, the arbitrator
corrected typographical errors in the award and issued a “Corrected
Arbitrator’s Award” on November 15, 2006. 
The corrected award restated the entire award with the corrections.   Because no party takes exception to the
arbitrator’s correction of the October 5 award in the manner stated, we
hereinafter refer to the October 5 award as corrected on November 15 as the
November 15 award.

Golden Spread and GS Generating
transmitted their damage calculations to Denver City.  After Denver City disputed the calculations,
Golden Spread and GS Generating filed a motion seeking resolution by the
arbitrator.  Denver City responded that
the arbitration was closed and the arbitrator lacked authority to consider
damage calculations. 

            In
an order of December 28, 2006, the arbitrator collectively awarded Golden
Spread and GS Generating over $5 million in damages.  According to the order, the arbitrator, in
the November 15 award, “awarded damages and ordered the parties to apply
numbers to a formula, failing in which, he would do so.  The Arbitrator is not modifying or changing
an Award.  The Arbitrator concludes that
the continuing oversight of damages computation by him is and was
appropriate.”  

            Golden
Spread and GS Generating moved the trial court to confirm the award.  Denver City sought vacation of the award as
modified by the December 28 order on grounds that the award lacked finality and
the arbitrator exceeded his authority. 
After a hearing, the trial court denied Denver City’s vacatur and confirmed the award to Golden Spread and GS
Generating.  Denver
City appeals. 

First Issue

By its first issue, Denver City
argues the arbitrator lacked authority to enter the December 28 order, and the
trial court therefore erred by not vacating that order.  Through multiple sub-issues it contends the
JOA and PPA, the AAA rules,[3]
the FAA[4]
and TAA,[5]
and common law[6]
validate the argument.  

Denver City’s argument is rooted in a
sentence appearing in the arbitration paragraphs of both the JOA and PPA, “The
arbitrator shall notify the Parties in writing of the decision within sixty
(60) days of the conclusion of the hearing.” 
This language, Denver City contends, is the parties’ agreed-upon
“contractual 60-day deadline,” precluding adjudication beyond that date by the
arbitrator.  

We review a trial court’s vacation,
modification or confirmation of an arbitration award de novo.  Werline v. East Texas Salt Water Disposal Company, 209 S.W.3d 888, 897 (Tex.App.--Texarkana 2006), affirmed by East Texas Salt Water Disposal Company v. Werline, 307 S.W.3d 267 (Tex. 2010) (citing cases for de novo review of vacation,
modification, or confirmation of awards in arbitration); Hisaw & Associates General Contractors, Inc. v. Cornerstone Concrete
Sys., Inc., 115 S.W.3d 16, 18 (Tex.App.--Fort
Worth 2003, pet. denied); Tanox, Inc. v. Akin,
Gump, Strauss, Hauer & Feld,
L.L.P., 105 S.W.3d 244, 250 (Tex.App.--Houston
[14th Dist.] 2003, pet. denied).  See also Aero Air, L.L.C. v. Sino Swearingen
Aircraft Corp., No. 07-07-0271-CV, 2009 Tex.App. Lexis 5187, at *2 (Tex.App.--Amarillo
July 7, 2009, no pet.) (mem.
op.) (citing Kergosien v. Ocean
Energy, Inc., 390 F.3d 346, 352 (5th Cir. 2004)) (vacatur reviewed de
novo).  

“Because Texas law favors
arbitration, judicial review of an arbitration award is extraordinarily
narrow.”  E. Tex. Salt Water Disposal Co. v. Werline,
307 S.W.3d 267, 271 (Tex. 2010); Pheng Invs., Inc. v. Rodriquez, 196 S.W.3d 322, 328 (Tex.
App.--Fort Worth 2006, no pet.) (op. on reh’g); Hisaw & Assocs.,
115 S.W.3d at 18. See Florasynth,
Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir.
1984) (“The confirmation of an arbitration award is a summary proceeding that
merely makes what is already a final arbitration award a judgment of the
court”).  “In the absence of a statutory
or common law ground to vacate or modify an arbitration award, a reviewing
court lacks jurisdiction to review other complaints, including the sufficiency
of the evidence to support the award.”  IPCO-G&C Joint Venture v.
A.B. Chance Co., 65 S.W.3d 252, 256 (Tex.App.--Houston
[1st Dist.] 2001, pet. denied). 
Thus an award may not be vacated even though it is based on a mistake of
law or fact.  Universal Computer Sys., Inc. v. Dealer
Solutions, L.L.C., 183 S.W.3d 741, 752 (Tex.App.--Houston
[1st Dist.] 2005, pet. denied). 
The arbitrator’s award on matters submitted for resolution carries the
same effect as the judgment of a court of last resort.  San Antonio v. McKenzie Const. Co., 136 Tex. 315, 326, 150 S.W.2d
989, 996 (Tex. 1941).  Every
reasonable presumption in favor of upholding an award is indulged.  CVN Group, Inc. v. Delgado, 95 S.W.3d 234, 245 (Tex. 2002); Kosty v. S. Shore Harbour
Cmty.
Ass’n, 226 S.W.3d 459, 463 (Tex.App.--Houston
[1st Dist.] 2006, pet. denied); IPCO-G&C
Joint Venture, 65 S.W.3d at 255-56. 
While every reasonable presumption is indulged to uphold the
arbitrator’s decision, none is indulged against it.  Kosty, 226 S.W.3d at 463; IPCO-G&C
Joint Venture, 65 S.W.3d at 255-56.  Cf. Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987) (“The showing
required to avoid summary confirmation is high”).  

The “authority of arbitrators is
derived from the arbitration agreement and is limited to a decision of the
matters submitted therein either expressly or by necessary implication.”  Gulf
Oil Corp. v. Guidry, 160 Tex. 139, 143, 327 S.W.2d 406, 408 (1959); see City
of Pasadena v. Smith, 292 S.W.3d 14, 20 n.41 (Tex. 2009) (same).  Arbitrators therefore exceed their powers by
deciding a matter not properly before them. 
Ancor Holdings, LLC v. Peterson,
Goldman, & Villani, Inc., 294 S.W.3d 818, 829
(Tex.App.--Dallas 2009, no pet.); Pheng Invs., 196 S.W.3d at 329.  The FAA and TAA authorize a trial court to
vacate an arbitration award if the arbitrator exceeded his powers.  9 U.S.C.A. § 10(a)(4)
(West 2009); Tex. Civ. Prac. & Rem. Code Ann. §
171.088(a)(3)(A) (West 2011).

Generally, an award in arbitration is
not final when “a substantive task remain[s] for the arbitrator to
perform.”  McKinney Restoration Co. v. Ill. Dist. Council No. 1, 392 F.3d 867,
871 (7th Cir. 2004); see also Millmen's Local 550, United Bhd. of Carpenters &
Joiners of Am. v. Well’s Exterior Trim, 828 F.2d 1373, 1376-77 (9th Cir.
1987); Pub. Serv. Elec.
& Gas Co. v. System Council U-2, 703 F.2d
68, 70 (3d Cir. 1983).[7]  This is true even if not all of the parties
to the arbitration believe further action is warranted.  Orion Pictures Corp. v. Writers Guild of America, West, Inc., 946
F.2d 722, 725 (9th Cir. 1991). 
“In order to be ‘final,’ an arbitration award must be intended by the
arbitrators to be their complete determination of all claims submitted to
them,” and “[g]enerally, for a claim to be completely
determined, the arbitrators must have decided not only the issue of liability
of a party on the claim, but also the issue of damages.”  Michaels
v. Mariforum Shipping, S.A., 624 F.2d 411, 413-14
(2d Cir. 1980) (discussing FAA); A/S Siljestad v. Hideca Trading,
Inc., 678 F.2d 391, 392 (2d Cir. 1982) (per curiam)
(same); see also Rocket Jewelry Box, Inc.
v. Noble Gift Packaging, Inc., 157 F.3d 174, 176 (2d Cir. 1998) (per curiam) (“[A]n arbitration award, to be final, must resolve
all issues submitted to arbitration, and . . . it must resolve them definitely
enough so that the rights and obligations of the two parties, with respect to the issues submitted, do
not stand in need of further adjudication”) (emphasis in original)); Lummus Global Amazonas S.A. v. Aguaytia
Energy del Peru S.R. Ltda., 256 F. Supp. 2d 594, 639 (S.D. Tex. 2002) (“As
a general rule, a final and definite arbitration award must both resolve all
the issues submitted to arbitration, and determine each issue fully so that no
further litigation is necessary to finalize the obligations of the parties
under the award”) (internal quotations omitted).  

An award that leaves only the
ministerial determination of the amount of damages, however, may nonetheless be
final.  See Flender Corp. v. Techna-Quip
Co., 953 F.2d 273, 280 (7th Cir. 1992) (court found award was final and
definite because calculation of commissions due on sales was a “ministerial
computation,” “easily ascertainable” from documents the arbitrator required
produced); Dreis & Krump Mfg.
Co. v. International Ass’n of Machinists and
Aerospace Workers, 802 F.2d 247, 251 (7th Cir. 1986) (precise amount of backpay could be determined “automatically” without
judgment or discretion by resort to company’s records and this “ministerial”
detail did not preclude finality). 
“Whether the award indicates [it is] final and whether the arbitrator
intended the award to be final are factors in determining if an arbitration
award is final.”  Local 36, Sheet Metal Workers Int’l Ass’n,
AFL-CIO v. Pevely Sheet Metal Co., Inc., 951 F.2d 947, 949 (8th Cir.
1992).  In Pevely Sheet Metal the Eighth Circuit held that an arbitration
award is not final if resolving the undetermined damage issue does “not merely
involve a simple calculation, but require[s] resolution of significant
issues.”  Id. at 949.  See
also Millmen Local 550, 828 F.2d at 1377.  Finality of arbitration requires a “‘complete
arbitration.’”  Pevely Sheet Metal, 951 F.2d at 949-50.  Requiring a complete arbitration is a rule of
prudence.  GES v. Bates, No 97 C3716, 1998 U.S. Dist. Lexis 3606, at *11 (N.D.
Ill. Mar. 20, 1998).   

As noted, the JOA and PPA required
the arbitrator to conduct a hearing within thirty days of his selection, and
then notify the parties of his decision within sixty days of the conclusion of
the hearing.  The agreements do not
define the term “hearing.”    

Significantly, however, after a
preliminary hearing, in February 2006 the parties and arbitrator agreed on a
scheduling order, in which they agreed that an “evidentiary hearing on the
merits,” which they labeled the “merits hearing,” would take place in Dallas
and conclude no later than May 26, 2006, unless extended by the arbitrator for
reasons beyond the control of the arbitrator or parties.  The scheduling order further provided that
the arbitrator would “determine when the Arbitration is closed for purposes of
beginning the sixty (60) days deadline for rendering a decision.”  The arbitrator did not observe the “sixty
days from close of hearing” requirement of the JOA and PPA but, pursuant to
authority granted him in the scheduling order, ordered “the record closed” on
August 15, 2006. 

The November 15 award only determined
questions of liability while providing a formula for subsequent calculation of
damages.  It specified, “The Arbitrator
shall keep the record open on this matter for a period of forty-five (45) days
from the date of this Award for the limited purposes of addressing any disputes
that arise that are directly related to the computation or payment of damages.”  The arbitrator could not calculate damage
amounts for inclusion in the November 15 award because he did not have before
him evidence of damages incurred after February 2006.  Golden Spread and GS Generating were
therefore to follow a stated methodology and calculate the specified
damages.  The methodology the arbitrator ordered, both for the calculation of damages and for the
correction of future billings, incorporated that devised by Golden Spread’s
expert David Surls, which has been referred to in the
confirmation litigation as the “Surls macro.”[8]  Evidence before the trial court showed the
macro did not work as written.  Golden
Spread and GS Generating then submitted a lengthier, modified formula which
Denver City viewed as a deviation from the November 15 award.  Golden Spread and GS Generating took “strong
exception” to changes made in Denver City’s billings and its claimed failure to
recognize or pay damages awarded.  Golden
Spread and GS Generating then moved the arbitrator to resolve the dispute and
with their pleading transmitted a “Workbook including the backup support” which
they asserted “detail[ed] the amounts” they were due
from Denver City.  From these
calculations, Golden Spread and GS Generating requested the arbitrator
determine the proper method for calculating pre-judgment interest and confirm
an amount of money due each in excess of $2.5 million.[9]

The arbitrator found and ordered that
he possessed authority to determine damages pursuant to the criteria set forth
in the Award and to grant the relief provided by the December 28 order.  He confirmed the damage calculations
submitted by Golden Spread and GS Generating, and
awarded Golden Spread $2,586,905 and GS Generating $2,513,919.  

In this court, Golden Spread and GS
Generating contend the damage calculation anticipated by the November 15 award
was “ministerial.”  Denver City contends
the December 28 order impermissibly modified the November 15 award, or was
itself a new award.  We agree with
neither party.  In substance, determining
the amount of damages flowing to Golden Spread and GS Generating from the found
liability of Denver City was not a ministerial task but one requiring
deliberation including resolution of disputed party positions.  Nor can we agree that the December 28 order
modified or amended a final award, or constituted a new award.  The November 15 award expressed the
arbitrator’s decision on issues of liability and the intended means for
calculation of damages.  The record was
reopened for calculation and enforcement of the damage amounts, leading to
completion of the arbitration.  Under the
facts here presented, this procedure was not inconsistent with AAA Rule
R-36.  Within the time allowed by Rule
R-36, the arbitrator delivered the December 28 order, which made the arbitration
complete.  

Nor did the procedure contravene the
parties’ agreements or statute.  It
appears indisputable that the arbitration “hearing” required by the JOA and PPA
was the hearing completed in May 2006. 
By the terms of the JOA and PPA, the arbitration award was due within
sixty days thereafter.  But the parties
and the arbitrator agreed on a different deadline which the November 15 award
met.  We find the conclusion inescapable
that the contractual deadline, measured as sixty days from the hearing, was
vitiated by the language of the February 2006 scheduling order and the
arbitrator’s actions pursuant to the authority given him in that scheduling
order.  

            Denver
City also illustrates its contention that the arbitrator exceeded his
contractual authority with Smith v.
Transport Workers Union of Am., AFL-CIO Air Transport Local 556, 374 F.3d 372 (5th Cir. 2004) (per curiam).  In Smith,
the court affirmed the district court’s vacatur of an
arbitration award “[b]ecause the arbitration
agreement clearly restricts the authority of the arbitrators to amend or
correct their award.”  Id. at 374.   According to the arbitration agreement,
“‘The arbitrators sua sponte may
amend or correct their award within three business days after the award, but
the parties shall not have a right to seek correction of the award.’”  Id.  Nevertheless, the arbitration panel modified
the award more than a month after the initial award.  Id.  The Fifth Circuit observed that arbitration
is a matter of contract and “the plain wording of the arbitration agreement
contemplates that the arbitrators will not consider correcting the arbitral
award at all at the behest of the parties, and forbids a correction or
amendment on the arbitrators['] own motion more than three business days after
the award.”  Id. at 374-75.  Relying on the restrictive language of the
arbitration agreement, the court concluded that the arbitrators exceeded their
powers by modifying the initial award.  Id. at 375.

            Analogizing
Smith to the case at bar is hindered
somewhat by the per curiam opinion’s limited
discussion of the facts.  That said, we
assume the “initial award” rendered in favor of Smith was the result of a
complete arbitration.  A complete
arbitration did not occur here until the arbitrator rendered a decision on
damages.[10]  And here the arbitrator’s actions were
consistent with, not contrary to, the scheduling order and AAA rules.  We accordingly find Smith distinguishable. 
Denver City’s first issue is overruled.

Second Issue

            Denver
City argues in its second issue that, if we vacate the December 28 order the
damage award incorporated into the trial court’s judgment “is too vague to
stand.”  Because we have overruled Denver
City’s first issue and do not vacate the December 28 order, discussion of
Denver City’s second issue is unnecessary to the disposition of the
appeal.  Tex. R. App. P. 47.1.    

Third Issue

            In
its third issue, Denver City argues the trial court erred by failing to vacate
the award because it was not mutual, final, and definite.  

            The
grounds for vacatur under the FAA are limited to
those specified by § 10 of the Act.  Hall Street Associates,
L.L.C. v. Mattel, Inc., 552 U.S. 576, 583-84, 128 S.Ct.
1396, 1403, 170 L.Ed.2d 254 (2008); Citigroup
Global Mkts. Inc. v. Bacon, 562 F.3d 349, 350
(5th Cir. 2009).  Section 10
provides the ground Denver City here argues. 
The district court may vacate an award if the arbitrator “so imperfectly
executed [his powers] that a mutual, final, and definite award upon the subject
matter submitted was not made.”  9
U.S.C.A. § 10(a)(4) (West 2009).  

As used by § 10(a)(4) of the FAA,
“mutual” and “final” mean “that the arbitrators must have resolved the entire
dispute (to the extent arbitrable) that had been
submitted to them” and “definite” means “that the award is sufficiently clear
and specific to be enforced should it be confirmed by the district court and
thus made judicially enforceable.”  IDS Life Ins. Co. v. Royal
Alliance Associates, Inc., 266 F.3d 645, 650 (7th Cir. 2001) (citations
omitted).

            Denver
City contends the award is indefinite because it failed to “resolve the key
issue submitted to arbitration--how is [Denver City] supposed to bill the
Golden Spread entities for start-up energy?” 
Denver City notes it was ordered by the arbitrator “to cease and desist
from certain billing practices and to change its future billing procedures by
incorporating a specific Excel spreadsheet “‘macro’” introduced into evidence
at the arbitration hearing by Mr. Surls.”  Denver City further argues the Surls macro was intended to modify Denver City’s billing
spreadsheet in the future “by removing fuel used to generate electricity from
the ‘Start_Fuel_1’ and ‘Start_Fuel_2’ columns of the [monthly generation
report] . . . . The Surls macro was supposed to
accomplish that, but it did not.”  It
seems to us the contention made is not that the arbitrator failed to complete
his assignment as to future billing procedures, for it is clear the award
provided detailed direction for modification of the billing practices; rather,
the nut of Denver City’s reasoning is the formula the arbitrator incorporated
into his award was wrong.  The macro
devised by expert Surls does not work.  

“The requirements of finality and
definiteness are ones more of form than of substance. They must not be confused
with whether the arbitrator[’s] award was correct or
even reasonable, since neither error nor clear error nor even gross error is a
ground for vacating an award.”  IDS Life Ins. Co., 266 F.3d at 650
(citing Major League Baseball Players Ass’n v. Garvey, 532 U.S. 504, 509, 121 S.Ct. 1724, 1728 149 L.Ed.2d 740 (2001); United Paperworkers
Int’l Union v. Misco, Inc., 484 U.S. 29, 38, 108
S. Ct. 364, 98 L.Ed.2d 286 (1987); George
Watts & Sons, Inc. v. Tiffany & Co., 248 F.3d 577, 579; (7th Cir.
2001); and Flexible Mfg. Systems Pty.
Ltd. v. Super Products Corp., 86 F.3d 96, 100 (7th Cir. 1996)).  

The law affords us an
“extraordinarily narrow” review of a trial court’s denial of vacatur and confirmation of award.  Myer v. American Life, Inc., 232 S.W.3d 401, 408 (Tex.App.--Dallas 2007, no pet.).  Our concern thus “is not whether the
arbitrator[’s] reasoning is incomplete in the sense that a syllogism would be
incomplete if it lacked its major or its minor premise but whether the award
itself, in the sense of judgment, order, bottom line, is incomplete in the
sense of having left unresolved a portion of the parties’ dispute.”  IDS
Life Ins. Co., 266 F.3d at 651.  Confronting technical and complex contract
terms and requirements, the parties chose arbitration for resolution of their
disputes over the retroactive and prospective allocation of fuel costs.  The arbitrator produced an award fixing
specific recoverable damage amounts and providing a specified means of
calculating future costs.  That Denver
City now believes the arbitrator rendered an unworkable solution to its future
billing dilemma is not, under the constraints that bind us, a ground for vacatur.  See id. 266 F.3d at 649 (“the grounds
for challenging an arbitration award are narrowly limited, reflecting the
voluntary contractual nature of commercial arbitration. Within exceedingly
broad limits, the parties to an arbitration agreement choose their method of
dispute resolution and are bound by it however bad their choice appears to be either
ex ante or ex post”).  

Denver City presents further arguments
in support of its third issue, but as we perceive them they either are
predicated on our vacating the arbitrator’s December 2006 order, or reiterate
contentions addressed in our discussion of its first issue.  Denver City’s third issue is overruled. 

Fourth Issue

            By
its fourth issue, Denver City complains that the entire award should be vacated
because the arbitrator exceeded his powers by ruling on an issue not submitted
to arbitration and his ruling conflicts with this court’s decision in Golden Spread, 269 S.W.3d 183.  

The nub of this complaint is the
arbitrator gratuitously determined how to price fuel used to generate
electricity.  The complained-of language
appears in a section of the November 15 award entitled “conclusions of law as
to Golden Spread and [Denver City],” wherein the arbitrator stated, “Under the
express terms of the PPA, recovery by [Denver City] for costs for all fuel used
to generate energy is subject to the PPA Heat Rates.”[11]  

“The FAA creates a presumption in
favor of arbitrability; so, parties must clearly
express their intent to exclude categories of claims from their arbitration
agreement.”  Paladino v. Avnet Computer Techs., 134 F.3d 1054, 1057 (11th Cir. 1998) (citing
First Options v. Kaplan, 514 U.S.
938, 945, 115 S.Ct. 1920, 1924-25, 131 L.Ed.2d 985
(1995) (stating that issues will be deemed arbitrable
unless it is clear that the arbitration clause has not included them)); see Cantella &
Co., Inc. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding,
per curiam) (holding that “[f]ederal
and state law strongly favor arbitration,” and “a presumption exists in favor
of agreements to arbitrate under the FAA”). 
Under the FAA, any doubts as to whether a claim falls within the scope
of an agreement to arbitrate are resolved in favor of arbitration.  Prudential Securities v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995)
(orig. proceeding, per curiam).  Without a transcript of the arbitration
proceedings, we will presume sufficient evidence and adequate reasoning support
the award.  Grand Homes 96, L.P. v. Loudermilk, 208
S.W.3d 696, 705 (Tex.App.--Fort Worth 2006, pet
denied) (citing Jamison & Harris v.
Nat’l Loan Investors, 939 S.W.2d 735, 737 (Tex.App.--Houston
[14th Dist.] 1997, writ denied)).  

Through the JOA and PPA, the parties
agreed arbitration could reach “any dispute, controversy or claim arising out
of, under or relating to this Agreement . . . unless otherwise provided in this
Agreement or mutually agreed by the Parties.” 
With similar breadth, the parties identified issues for the consolidated
arbitration.  According to the agreed
scheduling order, the arbitral issues were found in twelve identified
documents, inserts, and pleadings.  First
on the list was an October 11, 2005, letter from Golden Spread to Denver City
“instituting Dispute Resolution pursuant to the PPA.”  The letter indicates one of the disputed
issues was “[Denver City] has failed to properly calculate the Fuel Cost Rate
as required by the terms of the [JOA].” 
According to the JOA, which identifies Denver City as “the Partnership,”
the fuel cost rate equals the sum of, among other factors, “the quotient
obtained by dividing the Partnership’s start-up fuel cost allocation . . . by
the product of the Partnership Energy for the Month of determination times the
average PPA Heat Rate . . . .”  The PPA
assigns “PPA Heat Rate” the meaning contained in Appendix 2 of the PPA
entitled, “PPA Capacity and PPA Heat Rate.” 
This highly technical pamphlet includes attached heat rate
schedules.  It formulaically expounds on
matters such as PPA heat rates during different plant operations.  We quoted from the section pertaining to the
combined cycle stage of operations in our heat rate discussion in Golden Spread.  269 S.W.3d at 189.  

Given the breadth of the issues
identified in the scheduling order, and the nature of the evidence introduced
before the arbitrator, it is difficult to conclude the arbitrator exceeded the
scope of the issues submitted.  And, whether
the conclusion was necessary to the arbitrator’s analysis of other issues, or
more fundamentally, whether it was even correct are matters beyond the scope of
this review.  Absent a transcript of the
arbitration hearing and given the presumption favoring inclusion of the matter
giving rise to the complained-of conclusion within the arbitral issues, we must
conclude the arbitrator did not exceed the scope of his powers by issuing the
complained-of conclusion.  

Moreover, whether the complained-of
conclusion stands in legitimate conflict with a declaration of the trial court
in a portion of the case not referred to arbitration actually begs the inquiry
whether the arbitrator committed a mistake in law.  Down that avenue, we do not venture.  See,
e.g., Loudermilk, 208 S.W.3d at 705 (court will not
vacate an award because of a “mistake of fact or mistake of law”); Whiteside v. Carr, Hunt & Joy, L.L.P.,
No. 07-06-0207-CV, 2007 Tex. App. Lexis 409, at *6-*7 (Tex.App.--Amarillo
Jan. 23, 2007, pet. denied) (mem. op.) (citing TUCO Inc. v.
Burlington Northern RR. Co., 912 S.W.2d 311, 315 (Tex.App.--Amarillo
1995), modified, 960 S.W.2d 629 (Tex.
1997) (“Judicial scrutiny focuses on integrity of process rather than propriety
of result”).  Denver City’s fourth issue
is overruled.  

Conclusion

            Having
overruled each of Denver City’s issues necessary for disposition of this
appeal, we affirm the judgment of the trial court.

 

 

                                                                                                James
T. Campbell

                                                                                                            Justice

 











[1]  See Golden Spread Elec. Coop. v. Denver City
Energy Assoc., L.P., 269 S.W.3d 183 (Tex.App.--Amarillo
2008, pet. denied).

 





[2] The PPA provides it is governed “where applicable,”
by the United States Arbitration Act, as the Federal Arbitration Act (FAA)
previously was known.  See Stolt-Nielsen
S.A. v. AnimalFeeds Int’l Corp., 559 U.S. __, __,
130 S.Ct. 1758, 1773, 176 L.Ed.2d 605 (2010) (indicating
proper title of current act); 9 U.S.C.A. §§ 1-16 (West 2009).

 

The JOA provides only that it is
governed by the law of Texas.  According
to Denver City this means the Texas Arbitration Act (TAA), Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (West 2011), and
the FAA apply simultaneously since the JOA affects interstate commerce.  Perry v. Thomas, 482 U.S. 483, 489, 107 S.Ct.
2520, 2525, 96 L.Ed.2d 426 (1987). 
Appellees do not argue otherwise.  Under a general choice-of-law provision, such
as that of the JOA, we will apply the FAA although the TAA also applies to the
extent it is consistent with the FAA.  Roehrs v. FSI Holdings, Inc., 246 S.W.3d 796,
803 (Tex.App.—Dallas 2008, pet. denied) (citing In re D. Wilson Constr. Co., 196 S.W.3d
774, 779-80 (Tex. 2006)).





[3]  Denver City supports
its argument with the following AAA rules.

 

R-35.  Closing of Hearing.  The arbitrator shall specifically inquire of
all parties whether they have any further proofs to offer or witnesses to be
heard. Upon receiving negative replies or if satisfied that the record is
complete, the arbitrator shall declare the hearing closed. If briefs are to be
filed, the hearing shall be declared closed as of the final date set by the
arbitrator for the receipt of briefs. If documents are to be filed as provided
in Section R-32 and the date set for their receipt is later than that set for
the receipt of briefs, the later date shall be the closing date of the hearing.
The time limit within which the arbitrator is required to make the award shall
commence, in the absence of other agreements by the parties, upon the closing
of the hearing. 

 

R-36.  Reopening of Hearing.  The hearing may be reopened on the
arbitrator's initiative, or upon application of a party, at any time before the
award is made. If reopening the hearing would prevent the making of the award
within the specific time agreed on by the parties in the contract(s) out of
which the controversy has arisen, the matter may not be reopened unless the
parties agree on an extension of time. When no specific date is fixed in the
contract, the arbitrator may reopen the hearing and shall have 30 days from the
closing of the reopened hearing within which to make an award. 

 

R-38. Extensions of Time. 
The parties may modify any period of time by mutual agreement. The AAA
or the arbitrator may for good cause extend any period of time established by
these rules, except the time for making the award. The AAA shall notify the
parties of any extension. 

 

R-46.  Modification of Award.  Within 20 days after the transmittal of an
award, any party, upon notice to the other parties, may request the arbitrator,
through the AAA, to correct any clerical, typographical, or computational
errors in the award. The arbitrator is not empowered to redetermine
the merits of any claim already decided. The other parties shall be given 10
days to respond to the request. The arbitrator shall dispose of the request
within 20 days after transmittal by the AAA to the arbitrator of the request and
any response thereto.

 





[4]  Denver City
cites Volt Info. Scis.,
Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.
for the proposition that the FAA “permits a party to seek an order compelling
arbitration only ‘in the manner provided
for in [the parties’] agreement.’”  489 U.S. 468, 474-75, 109 S.Ct. 1248,
1253, 103 L.Ed.2d 488 (1989) (emphasis in original).

 





[5] Denver City cites § 171.053(c)(1),(d) of the Texas Civil Practice & Remedies Code,
providing in part, “The arbitrators shall make the award: (1) within the time
established by the agreement to arbitrate . . . 
(d) The parties may extend the time for making the award either before
or after the time expires. The extension must be in writing.”  Tex. Civ. Prac. & Rem. Code Ann. § 171.053(c)(1),(d) (West
2011)





[6] Under the common law, “[a]rbitrators complete their function and lose their authority
to act after making a final determination on a matter.  This principle, known as the doctrine of functus officio, prevents an arbitrator from reexamining
the merits of a final award.”  AO Techsnabexport
v. Globe Nuclear Servs. & Supply GNSS, No. 09-2064, 2010 U.S. App. Lexis 25640, at *15 (4th
Cir. Dec. 15, 2010) (citations omitted).





[7] 
In this commercial arbitration case, we find the cited labor arbitration
cases appropriate to the analysis.  See Painewebber
Inc. v. Elahi, 87 F.3d 589, 594 n.6 (1st Cir.
1996) (“Earlier, one might have doubted whether appellate decisions concerning
labor arbitration would apply to commercial arbitration. Today, there is little
question”).    





[8] According to testimony by Denver City at the
confirmation-vacatur hearing, a macro “is a program
that runs the Excel worksheet that it’s linked to.”

 





[9] Rule R-36 authorizes an arbitrator to reopen the
hearing on his own initiative any time before the award is made provided
reopening does not prevent making the award within the specific time agreed by
the parties.





[10] We acknowledge the November 15 award contains a
paragraph reading, “This AWARD is in full settlement of all claims submitted to
this arbitration.  Any issue not
specifically decided is hereby DENIED.” Given the award’s express provisions
for calculation of damages and resolution of disputes over damages, and
considering the award document as a whole, we cannot read that paragraph as
controlling.





[11] We do not decide whether this language, couched by
the arbitrator as a “conclusion of law,” rather than an award, is decretal.